# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

EXTRA AND SPECIAL TERM, JULY, 1874.

JOHN W. PRICE AND WIFE, ADMINISRATOR, &c., ET AL.; APPELLANTS, VS. HENRY HICKS, APPELLEE.

1. For the purpose of reviewing the statement of an account by a referee appointed under the Code of Procedure, who was directed to take and state an account of partnership transactions, and of the partnership property, the debts and credits of the copartnership, what real and personal property was purchased with partnership funds, and to take testimony and report the same in writing upon all the facts and issues in the case, it is not essential, upon an appeal from a decree entered in accordance with conclusions drawn by the referee in his report, for the purpose of review, that exceptions shall have been taken to the report in like manner as exceptions may be required to a report of a master in chancery, to whom matters are referred for adjudication.

1. F. a free white man, and H., a slave, in 1863 carried on business as partners, the slave's master being paid an agreed sum for his hire, and real and personal property were purchased with the profits of the partnership business; and after H. became free, the partnership business was renewed upon terms which recognized H.'s rights as a partner, while he was a slave; *Held*, that the rights of H. in the partnership business, and in real and personal property so acquired during servitude, must be recognized to the same extent as though he had been free.

3. Where land is purchased by partners with partnership funds for partnership use and convenience, and conveyed to them in such manner as to make them tenants in common, it will be treated and considered

16

in equity as vesting in them in their partnership capacity, and to be applied to partnership purposes, for the satisfaction of the partnership creditors and of the claims of the individual copartners as between themselves in the settlement of the copartnership affairs, as against dower and the claims of heirs-at-law.

4. Where land is purchased by partners with partnership funds, but not for the use and convenience of the partnership business, or in the legitimate line of their partnership business, they become invested with the title as tenants in common, and their respective interests therein are several.

5. Where two partners purchase real estate with joint funds, taking the title in the name of the wife of one of them, her title is subject to a resulting trust in favor of the individual partners and the rights of their creditors.

6. When one of two partners dies, the survivor is entitled to the possession and disposition of all the partnership property, and in a suit by him instituted for the purpose of closing up the affairs of the copartnership and to recover from the estate of the deceased partner any amount due him from the deceased, it will be improper to include in a decree in favor of the survivor any amount invested by the partners in real or personal property, unless such property had been disposed of by the deceased partner, or for his use, in his life-time. The fact that the title to land purchased by partners with partnership funds was taken in the name of the wife of one of the partners, since deceased, or that any of the property of the copartners has been disposed of by the widow, or that she has collected money due on partnership accounts, affords no ground for charging the estate of the deceased partner at the suit of the survivor. A surviving partner cannot charge the estate of the deceased partner for a share of the earnings of the copartnership which remain in open account against their customers, or which were not paid to or realized by the deceased in his life time.

Appeal from the Circuit Court, Second Judicial Circuit, for Leon County.

Hicks, complainant, commenced his suit in 1869, in equity, against John W. Price, administrator, and Elizabeth O. Price, administratrix of the estate of Henry B. Fitts, deceased, and against the infant children of the deceased, and alleged in his bill that in 1863 complainant was a slave of one Alston; that with the consent of his owner he formed a partnership with Henry B. Fitts in the business of blacksmithing at Tallahassee, which continued for about one year.

during which they earned large sums of money, Fitts keeping the accounts and collecting the moneys earned. From January, 1866, they again carried on the business as partners until Fitts' death in July. The hire of Hicks from his owner in 1863 was to be paid at $600 per year out of Hicks' share of the earnings. During the year 1863, there was purchased by the partners with the partnership funds, two town lots described as lots 15 and 16 in the north addition to Tallahassee, and that Fitts took the title thereto in the name of his wife, Elizabeth O. Fitts, " with the full understanding and agreement between the parties that the purchase should enure to the benefit of the copartners *equally*." That Fitts collected during the copartnership in 1866 the sum of $3,583, clear profits, no part of which he divided with complainant. That during the copartnership in 1863, two mules and one horse were purchased by the firm, of which one mule and the horse were sold by Fitts, who appropriated the money received to his own use, the other mule was sold by Mrs. Fitts since Mr. Fitts' death. A valuable wagon was made by the firm as their property, which remained in the hands of Mrs. Fitts.

During the existence of the partnership an execution in favor of one Lively against Fitts was levied upon the shop and lot belonging to Fitts, where they carried on their trade, and the execution was paid off with partnership funds, amounting to between three hundred and four hundred dollars. Complainant alleges that Elizabeth O. Fitts obtained letters of administration upon the estate of her husband; that she has since intermarried with John W. Price; that he has endeavored to obtain a settlement with them of the said partnership affairs but without avail.

Complainant prays that an account may be taken of all the earnings and assets of the copartnership, that so much as may be found due him may be decreed to be paid to him out of the estate or the copartnership property, and especially that the said lots 15 and 16, and the lot on which the blacksmith

business was carried on, may be decreed to be sold to satisfy complainant's claim.

The defendants demurred to the bill and the demurrer being overruled they severally answered. Mrs. Price answered that complainant was not a partner of her husband Fitts in 1863, but a hired servant; denies that there was any property purchased by the parnership, or any money earned; that the house and lots 15 and 16 were purchased by her with her separate property, and so also the horses and wagon and some land called the "Lasch" land. The answer of the infants was the general answer in common form.

An order of reference was made to a referee, (the Code of Procedure having been adopted after the commencément of the suit,) "to take and state an account of all partnership transactions set forth in the bill of complaint between complainant and Fitts in his life time, and of all the property of said copartnership and what became of the same, and of all debts and credits of said copartnership, and whether any and what property, real or personal, was bought by either of said copartners, and paid for out of the copartnership money or effects, and to take testimony and report the same in writing upon all the facts and issues set forth and made in the pleadings in the case."

The referee reported that he found the account books of the firm so badly kept that it was "impossible to obtain any correct idea of the status of the parties" as to the transactions of 1863, but was compelled to rely on the evidence; that he obtained from the books the following: "That the earnings of the partnership in 1866 amounted to the sum of.....................................$2,449.38
Expenses of shop............................ 15,35

Net earnings.............................$2,434.03
Complainant's share, one-half.................. 1,217.01
Advanced to complainant.................... 359.00

Balance due him........................ $858.01"

Price and Wife et al. v. Hicks.

From the testimony of the witnesses, he says he finds "that Henry B. Fitts was indebted at the time of his death as follows : House and lot costing in Confederate currency the sum of $3,000, worth in U. S. currency $600.

|  |  |  |  |
|---|---|---|---|
| Complainant's share.... | | | $300.00 |
| One horse value 100, | " | " | 50.00 |
| Two mules 200, | " | " | 100.00 |
| Set of gear, 10, | " | " | 5.00 |
| One wagon, 100, | " | " | 50.00 |
| Lasch land 600, | " | " | 300.00 |
| Improvements on house and lot and share of crops 200, one-half......................... | | | 100.00 |
| | | | $905.00 |
| Interest two years at six per cent...... ......... | | | 108.60 |
| Interest six years at eight per cent............. | | | 434.40 |
| Balance due on earnings of 1866, as per book,.... | | | 858.01 |
| Interest on same five years,..................... | | | 343.20 |
| Due on fi. fa................................ | | | 162.02 |
| Interest six years at six per cent............... | | | 40.32 |
| Interest six years at eight per cent............. | | | 77.76 |

Am't due complainant 6th January, 1872..$2,929.31."

The referee further reports : " It being duly established from the testimony that the land, house and lot, horse and mules and wagon, were bought with the partnership property, though the titles were taken in the name of Mrs. Fitts, yet as they were not purchased with her funds, I would respectfully submit that the complainant has an equitable lien on said property. But inasmuch as one of the defendants, Mrs. E. O. Price, on the 2d day of August, A. D. 1869, alienated a portion of said property, *if* the same was deeded to an innocent purchaser for a valuable consideration and without notice, it is no longer subject to the claim of the complainant. The property not disposed of is still liable, and the administratrix of the estate of H. B. Fitts having

disposed of a portion of said property in her own wrong, is responsible in her ———— and as administratrix. I therefore recommend a judgment in favor of complainant in the sum of $2,929.31."

Some twenty exceptions were taken to the report by defendant's counsel, only two of which, however, were sustained by the court, to wit: that the credit of $162.02, amount paid by Hicks, is improperly credited in said report to Hicks, and that the charges for interest are not sustained by any testimony showing the true accounts upon which interest is allowed or calculated. The report was recommitted to the referee with instructions to report whether the items of one horse, two mules, lot of gear, one wagon, Lasch land, improvements on house and lot and share of crops, were valued in U. S. or Confederate currency, and upon what testimony he ascertained said values, and that he restate the account, reducing Confederate to U. S. currency, and allow interest at the rate of six per cent. on amounts which accrued prior to the act of 1866 regulating the rate of interest, and at the rate of eight per cent. on amounts accruing since the passage of that act.

The referee subsequently reported as follows: House and lot costing in C. S. currency, $3,000, worth in U. S. currency ................$1,000—Hick's share....$500.00

| | | | | |
|---|---|---|---|---|
| One horse, U. S. cur'cy. | 170 | " | | 85.00 |
| 2 mules, | " | 240 | " | 120.00 |
| 1 wagon, | " | 125 | " | 62.50 |
| Lasch land, | " | 80 | " | 40.00 |
| Corn, 600 bush. | " | 600 | " | 300.00 |
| Fodder, 7200 lbs. | " | 72 | " | 36.00 |
| Wagon gear, | " | 20 | " | 10.00 |

$1,153.50

Interest 9 years 9 months at 6 per cent......... 676.27

Balance as per books 1866, (first report)........ 858.01

Interest from 1st July, 1866, at 8 per cent...... 497.64

Total due Henry Hicks.................. $3,185.42

Price and Wife et al. v. Hicks.

The testimony taken, except the books of account, is submitted with the report. The court therefore made a decree "that a copartnership existed between the complainant and H. B. Fitts in his life time, as set forth in the bill of. complaint; confirms so much of the original report of the referee as sets forth that the house and lot in the city of Tallahassee conveyed to Mrs. Eitts, was paid for with the funds of the copartnership; and confirms so much of the amended report as sets forth and finds that the sum of $3,185.42 was, on the date of the report, October 8, 1873, due the complainant from the defendant, Elizabeth O. Price, as administratrix, and John W. Price in right of his wife administrator of the estate of Henry B. Fitts, deceased," and thereupon the court entered judgment accordingly, and ordered and decreed that the said lots 15 and 16 having been purchased with copartnership funds, she held the title as the trustee for said copartnership, and that the same is subject to be sold to satisfy the said debt, and that R. A. Shine, one of the masters of the court, sell the same, &c.

The defendants excepted to the rulings and decree and appealed therefrom.

*Papy & Raney* for Appellants.

The decree or judgment of the court below should be reversed,

1. Because, if the testimony is to be taken most strongly in favor of the plaintiff in the court below, it creates at most only a resulting trust; and as the money which Hicks states was the consideration of the purchase was partnership funds, a trust in such cases would result in favor of the partners and each partner would be entitled to one-half interest in the property. It would then follow that Hicks would be entitled to one-half interest in the lot deeded to Mrs. Fitts, (now Mrs. Price,) and if so, all that the decree should have given him was one-half interest in the property. But instead of this, it makes Hicks a creditor of H. B. Fitts to

the extent of one-half the purchase money, and then decrees the whole property to be sold to pay Hicks his one-half interest in it. The effect of this is to give Hicks the benefit of the whole to make good his one-half. No resulting trust, of the nature of that which which may be considered as existing in this case, carries with it such a consequence. If it had been alleged and proved that Hicks' part of the purchase was in the nature of a loan, and that a *lien* on the property existed for his reimbursement, or that the investment was without Hicks' consent, then a decree to sell it to pay what was due him might be upheld. But there is no case like this alleged or proved. Then if there was a resulting trust, Hicks would be entitled to one-half only. But, besides, there is nothing to show that there was any balance due from one partner to the other on account of the alleged partnership in 1863 at the time the lots were purchased. Even upon the idea of a resulting trust, the deed alleged to have been taken by H. B. Fitts in the name of his wife is to be regarded as a conveyance by him to his wife of his half interest, which he could legally do, and the fact alleged or stated by Hicks himself that the property was bought that Mrs. Fitts might have a house, clearly shows that no fraud was contemplated by Fitts in taking the deed in the name of his wife. It is true that where a trustee invests trust funds and takes title to himself, the *cestui que trust* may either elect to take the property purchased or the money, and have a decree for the money instead of the property. But this is not so in regard to a resulting trust, of the kind in question. It must appear that the investment was wrongful, or without the consent of Hicks, to authorize a decree for the money and a sale of the property to pay it. 7 B. Mon., 433 ; 2 Wash. C. C. Rep., 442 ; 4 Eng., 518 ; 2 Sto. Eq., secs. 1254, 1257 ; 3 How., 485 ; Adam's Eq., 156, note ; Perry on Trusts, sec. 144.

2. The decree is erroneous because, if based on the idea that Fitts became indebted to Hicks by virtue of the part-

nership which was entered into in 1866, this was a subsequent indebtedness and could not affect a deed which conveyed property to his wife in 1863. Hicks knew of the conveyance when the subsequent partnership was formed, and no promise by Fitts as an inducement to form the new partnership could result in divesting his wife of the title which she acquired under the deed made to her in 1863. Nor could any indebtedness from Fitts to Hicks growing out of the new partnership subject the property conveyed to Mrs. Fitts in 1863 and divest her of the right she had already acquired, whether the conveyance to her be considered as a voluntary conveyance or not. 2 J. C. R., 413 ; Adam's Eq., 157, note ; 2 Beavan, 456 ; Perry on Trusts, 123, 147.

3. Hicks was an incompetent witness, and his testimony in regard to transactions and communications between himself and H. B. Fitts should be disregarded, because Hicks is a party to the action and Fitts was deceased at the time Hicks' testimony was taken. Sec. 331 of Florida Code.

4. The decree is erroneous because it embraces Hicks' alleged half of the purchase money of the Lasch land as a charge against Fitts. If the testimony is to be taken most strongly in favor of the plaintiff, it creates only a resulting trust as to this land, and there is no evidence that the same does not still stand in the name of Mrs. Fitts, or that it was in any manner disposed of; and such being the case, the reasoning used above as to the house and lots is applicable, and the court should have only decreed to the complainant a resulting trust to the extent of one-half of the land.

5. The decree is erroneous because, in confirming the report of the master, it fixes the value of the personal property at the time of taking the testimony as the measure of Hicks' right of recovery, whereas if he had any right of recovery growing out of the payment of the partnership funds, &c., the amount paid or its value and interest is the measure of recovery.

The present value of the mules is taken, whereas the tes-

timony of Hicks is that in 1863 they cost $252, the amount scaled at Confederate values. Assuming that Confederate money was worth from two to three to one in U. S. currency, would give them a value of but $126 at that time, and make Fitts chargeable with but $63 and interest at 6 per cent. for ten years, being about $100, whereas he is now charged with $120. Apply same test to value of wagon.

6. Fitts is charged with the wagon, when the testimony is that the wagon still exists, being on the Fitts' place, and that it is partnership property, having been bought with partnership funds for the partnership. Hicks, as surviving partner, is entitled to the possession of this wagon, and if Mrs. Fitts withholds it from him, he should bring his action against her individually for it for the benefit of the partnership. It should not be charged against Fitts in the partnership account, nor its value be sought to be recovered by a sale of other property.

The mules sold by Mrs. Fitts is a charge against her individually, and not against Fitts, or in the partnership account.

7. There is no proper or sufficient proof as to the quantity of fodder produced, but merely an estimate based on a relation of the fodder crop to the corn crop, without any testimony as to the character of the crops that year, or how much land was cultivated. The testimony as to the quantity of land worked is fifty or sixty acres, when in fact the place contained only forty acres.

8. We maintain, finally, that though the above positions are correct if there be a resulting trust, yet the testimony is not sufficient to make out a resulting trust in favor of Hicks. The testimony of the other witnesses besides himself is very uncertain and contradictory, not clear and positive. 1 J. J. Mars., 3 ; 1 Bibb, 609, 611 ; 30 Maine, 126.

*R. B. Hilton* for Appellee.

It will be noticed from an examination of the record that no exceptions were made or taken by the defendants to the order of the Chancellor of July 7th, 1873, by which their exceptions numbered respectively 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 17, 18, 19, 20, to the original report of the referee, were overruled.

It will be further observed that no exceptions whatever were made or taken by the defendants to the referee's second, or supplemental or amended report. It is upon that report that the final decree of the Chancellor is based.

" When no exceptions are filed to the report of the master, no exceptions can be taken to it in the Supreme Court." 3 How., 691; 2 Grat., 116.

The copartnership contract entered into between Hicks and Fitts in January, 1863, though made when Hicks was a slave, yet having been entered into with the assent and concurrence of Alston, the master of Hicks, was not void. A slave may make a valid contract, by the assent of his master, with a third person; so held in the English Court of Common Pleas in 1802, in the case of Williams vs. Brown, 3 B. & P., cited in 1 Par. on Con., 410. And in note to page 148 of Hill on Trustees, it is said : " Notwithstanding the rule of the law that a slave cannot acquire property, a purchase of land may be made by one, in the name of a free person, with the assent of the master, in which case, though the right of present enjoyment might be prevented by the state of slavery, yet no one could interfere but the master, and if the slave subsequently becomes free, the resulting trust may be enforced." The case cited is Lieper vs. Hoffman, 26 Miss., 615, by reference to which in U. S. Digest for 1855, p. 509, it will be seen that the contest there was between the emancipated slave and a party who, with notice of the trust, had taken a deed of the property from the person in whom the title was vested for

the slave's benefit. See also 38 Ga., 655; 43 Miss. 603; 63 N. C., 131, 356; 3 Heiskill, 654.

No doctrine is better established than that "where, upon a purchase of property, the conveyance of the legal estate is taken in the name of one, while the consideration is given or paid by another, a resulting trust arises, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds."

The bill charges and the evidence proves that during the existence of the copartnership, there was purchased by the copartners, with the earnings of the copartnership, and as the property of the copartners, "the real estate adjudged to be sold by the decree." A resulting trust has been held to arise when a purchase is made by a man in his own name, but with funds in his hands in a fiduciary capacity, as where a trustee buys with trust money or a partner with partnership funds. Hill on Trustees, 147, note.

Again: "If a partner applies the partnership funds or invests the same in his own name, and for his own use, the other partners have a right, if they can distinctly trace the investment and elect to do so, to follow the partnership funds in the new investment, and to treat it as trust property held by that partner for the benefit of the firm, and as liable to be accounted for by any person into whose possession the same may come, who is not a *bona fide* purchaser for a valuable consideration, without notice. Collyer on Partnerships, sec. 182.

RANDALL, C. J., delivered the opinion of the Court.

It is objected on the part of the respondent that the court will not go behind the report of the referee in this case, because no proper exceptions were taken thereto. While it is true that as a general rule where no exceptions are taken to the report of a master, no exceptions will be allowed in the Supreme Court, the rule can hardly be made to apply here. This was a reference under the provisions of the Code,

*not* for the purposes of a *trial* by the referee, but for the *information* of the court, to take and state an account of the partnership transactions, and of the partnership property, and what has become of it, what were the debts and credits of the copartnership, what real and personal property was purchased by either of the copartners with copartnership funds, and "to take testimony and report the same in writing upon all the facts and issues in the case." The referee presents the testimony taken before him, states an account therefrom and recommends judgment for the complainant for a certain sum as stated to be due.

There were two reports made by the referee. The defendants excepted to the first report, and it was recommitted for the purpose of making it more clear, but it does not seem that the second report avoids the effect of the exceptions. But are exceptions necessary? "Where a master by his report states all the facts correctly, but is mistaken as to the legal consequences of these facts, it is not necessary for the party dissatisfied with the master's finding to except to the report, as the question decided by the master may be opened upon further directions without exceptions." (Daniel's Ch. Pl. and Pr., 1,492.) The court entered judgment " confirming" the report of the referee and awarding the amount, as recommended, against the appellants, whereupon the appellants excepted to the rulings and judgment of the court. The only mode of reviewing the rulings of the referee or his report is by an appeal from the judgment entered thereon, whether the findings be on a question of law or fact. (Code, sec. 218;) and this is only where the issues are referred *for trial*, and it seems unnecessary to " confirm " a report of a referee appointed solely to take testimony and report upon matters for the information of the court, as in this case, for he was not called upon to exercise any judicial judgment as to the law or the facts.

Under the pleadings in this case, the first issue to be tried is whether there was a copartnership between the complain-

ant and Henry B. Fitts as to the several transactions occurring between them in the years 1863 and 1866. From the evidence it cannot be doubted that such partnership did exist in 1863, and again in 1866, and whatever question might have been raised as to the rights of the parties on account of the status of the complainant in 1863, yet the subsequent negotiations resulting in a renewal of the copartnership after he became free recognized his rights as though he was free in 1863, and he is entitled to the benefit of that recognition. It does not appear that there was a continuing copartnership from 1863 to 1866, because the complainant expressly states that he refused to continue it after 1863, and he gives no account of his own earnings, and demands none of the earnings of Fitts during the interval. The testimony relates only to the joint operations in 1863 and in 1866.

What then are the rights of the parties growing out of the partnership and the voluntary investment of partnership funds in real estate, whether for the purposes of the joint business, or otherwise, as an investment of surplus capital outside of the regular business for which the copartnership existed?

During the year 1863, while Hicks and Fitts were conducting their business of blacksmithing, they purchased and paid for, out of their earnings, certain real estate, the title to which was taken in the name of the wife of Fitts, (one of the defendants,) " but with the full understanding and agreement between them that the purchase should enure to the benefit of the copartners equally." This is the statement in the bill. In his testimony complainant says he was not aware until some time after the purchase that the title was taken in the name of Mrs. Fitts, and had supposed the title had been taken in the name of both the partners, and on expressing dissatisfaction with the condition of the title, became satisfied upon being assured that the title should be " made out properly," or his share of the purchase money paid to him. The investment was made in the house and

lot in Tallahassee at the suggestion of Mrs. Fitts, who wanted " a house to live in."

In Goodwin vs. Richardson, (11 Mass., 467,) the court holds that where two parties buy land with partnership funds, and there is nothing done in the way of agreement between them how it is to be held, it is not in the law considered as partnership property, that is, it is not subject to the law governing partnerships generally. So in New York, Cole vs. Coles, (15 Johns., 159,) which was an action of assumpsit by the administratrix of a deceased partner against the survivor, for money had and received upon a sale of real estate belonging to the partnership sold jointly in the partner's life time, the proceeds whereof were converted to the use of the defendant, the court says : " There may be special covenants and agreements entered into between partners relative to the use and enjoyment of real estate owned by them jointly, and the land would be considered as held subject to such covenants, but nothing of that kind appears in the present case ; and in the absence of all such special cove·nants, the real estate owned by the parties must be considered and treated as such, without reference to the partnership." This is the rule of the English law. In equity, " whenever real estate has been purchased by the partners with partnership funds *for the use and convenience of the partnership*, and there is no ·express agreement that the property shall be the individual property of the partners, each standing as a debtor to the joint fund for the cost, it remains as part of the joint stock or fund." In Loubat vs. Nourse, 5 Fla., 351, Justice Thompson delivering the opinion of the court, says : " The facts of this case bring it within the equitable rule before laid down. The wharf lot was purchased, and the wharf erected thereon, out of the joint or partnership funds ; it was held and owned as joint property, for the use and convenience of the partnership, the partnership alone having the reception of the rents and profits therefrom ; and therefore the application of it to partnership

purposes, such as the satisfaction of creditors against the dower of the widows of the partners and the claims of the heirs at law, is clear beyond a doubt."

This court in Robertson vs. Baker, 11 Fla., 192, 225, says: " The *contract* or *agreement* of the parties, and even the *intention*, when clearly manifested, is recognized as the true and only test by which the character of partnership property is to be determined, and this, we think, will be found, upon a critical examination of the reported cases, to be the established doctrine of the English courts." * * " In Massachusetts, the doctrine of conversion is carried beyond that of the English courts, and it is there held that ' when real estate is purchased by partners with partnership funds, for partnership use and convenience, although it is conveyed to them in such manner as to make them tenants in common, yet in the absence of an express agreement, or of circumstances showing an intent that such estate shall be held for their separate use, it will be considered and treated in equity as vesting in them in their partnership capacity, clothed with an implied trust that they should hold it until the purposes for which it was so purchased shall be accomplished, and that it shall be applied, if necessary, to the payment of the partnership debts.' " The court in Robertson vs. Baker adopted the rule as just quoted from Dyer vs. Clark, 5 Metcalf, 562, as the better law, and it is therefore considered the law of this State.

These two cases refer exclusively to lands purchased and held for the use and convenience of the partnership in carrying on its business or trade. Where land has been bought by partners and paid for out of partnership funds, but not for the use and convenience of the copartnership business, or for the purposes of the copartnership, the English rule yet prevails, and the individual partners are tenants in common of the estate as real and not as personal; and this distinction is observed in the cases cited from 5th and 11th Florida Reports.

Price and Wife et al. v. Hicks.

It seems to us from the present state of the pleadings and the evidence in this case, that the lots 15 and 16 in Tallahassee were purchased by Hicks and Fitts with their joint funds as an investment outside of any connection with the carrying on of the partnership business, and that their interests became several, as tenants in common of real estate, without reference to the existence of the copartnership.

In this light, the house and lots 15 and 16, having been conveyed to Mrs. Fitts for the purposes and with the intent and objects stated in the testimony, (if that be sufficient to overcome the sworn answer of Mrs. Price, which it is unnecessary now to determine,) the effect is that she holds the title as a trustee for the use of the complainant as to one moiety, and for the use of the estate of her late husband as to the other moiety, unless as to that the conveyance to herself may have invested her with a good title, except as to the existing creditors of the copartners or of her husband.

The decree in this case adjudges that the complainant recover against the defendants, Price and wife, as administrator and administratrix of the estate of Henry R. Fitts, deceased, the sum of three thousand one hundred and eighty-five dollars and forty-two cents, this sum being the aggregate of the items in the report of the referee, which includes the complainant's share of the purchase money of the Tallahassee lots and the "Lasch land," a mule, wagon, and other personal property which were in the possession of one or both of the partners at the time of the death of Fitts, and which personal property belonged to the complainant as surviving partner.

Most assuredly as to these items, the cost or value of the real estate held by Mrs. Fitts as trustee, and of the personal property belonging to the survivor, there can be no claim in favor of the complainant against the estate of the deceased partner. If he is rightfully the beneficiary of the resulting

trust in the lands conveyed to Mrs. Fitts, whether individually or as surviving partner, he may have his remedy, but not as for an indebtedness against the estate of Fitts, for the property has not gone into that estate. The mule and the wagon, and such other of the personal property as belonged to the partnership at the death of Fitts, were not of his estate, and if they have been disposed of by a wrong doer, the remedy must be against some other than the representatives of the estate as such.

A large item of the indebtedness mentioned in the report of the referee is for interest on the money invested in the real and personal property. It cannot be that Fitts' estate is chargeable with interest upon money invested in the lands or other property in trust for the benefit of the complainant himself, and which property remained in the possession of the several partners at the time of the dissolution by the death of Fitts; for the investment was not made fraudulently, but voluntarily by Hicks himself, and the title in the lands so taken for his use in the name of any third person is his title, as effectually as though it were vested in his own name. Nor can the fact that the trustee was the wife of Fitts give any greater color of claim against his estate than if the trustee had been any other third person.

Nothing said here is in contravention of the principle contended for by the respondent, as to the investment or disposition of trust funds, or of money or property held by one in a fiduciary capacity, or of a wrongful conversion of partnership funds by one of the partners without the consent of the other partner. The title to the lands was undoubtedly taken in the name of another than Hicks, because of his then legal incapacity to hold in his own name; and the transaction was managed by a very intelligent and honorable member of the bar, (Judge Hogue,) selected by Hicks himself for the purpose.

As to the "Lasch land" of which mention is made, there is nothing charged in the bill which seems to relate to it,

or to any other land than that described as lots 15 and 16 in Tallahassee, and there is no charge that any partnership funds were invested in any other. Mrs. Fitts (Price) states in her answer that the Lasch land was bought with her own money, and in this manner this land is first brought into the case. Complainant swears that it was bought with the partnership funds, but he does not recollect its cost. Anthony Hicks says Fitts told him it cost $1 per acre, and that between 50 and 60 acres was planted in corn, potatoes and ground peas. Latham says there was only 40 acres of it, mostly cleared. Two or three other witnesses say that Fitts told them that Hicks owned one-half interest in it, and that they were cropping the land together. Here, then, is one witness, complainant, who says the land was bought with partnership funds ; several who heard Fitts say it was owned by the partners and they were working it as partnership property. Here, also, is a crop gathered of 600 bushels of corn and other crops, estimated by the referee to be worth $672, one-half of which, with nearly $200 interest thereon, is charged against the estate of Fitts, without any deduction or credit for any portion of this fodder, which, for aught that appears, may have been fed out to the partnership stock. If Fitts used this produce for his own private benefit, his estate is doubtless liable for the value of one-half of it, and while the complainant was a witness in the case it would have been more satisfactory for the purpose of sustaining the decree if he had shown that no portion of this crop was used in feeding and keeping the partnership cattle. The only testimony on the subject is that of one witness who says that Fitts told him " he had *used* " the crop ; and it seems somewhat peculiar that the complainant makes no mention whatever of this land or the crops in his bill of complaint. If, under the circumstances, the testimony is sufficient to overcome the answer of Mrs. Price as to the purchase of this land, and to show that it was owned and used for partnership purposes, it was then a part of the as—

sets of the firm, held in trust for the survivor, for the purpose of a final liquidation of all the partnership affairs; but the land, or the value of it, is not the proper basis of a charge against the estate of the deceased partner, whether it be deemed assets of the firm or lands held by the several owners as tenants in common. The referee charges it against the estate, because, he says, Mrs. Price, holding the title, sold it, (at a time subsequent to the commencement of this suit,) and "*if* the same was deeded to an innocent purchaser for a valuable consideration, and without notice, it is no longer subject to the claim of the complainant," and that "having disposed of a portion of the property in her own wrong is responsible" as administratrix, and *therefore* charges it against the estate. We think the court erred in taking the same view of the matter.

In regard to the value of the personal property which was taken and used or converted by Fitts in his life time, the proper rule in charging the estate would be to ascertain its actual value in lawful money at the time it was taken or used, and add interest at the then lawful rate to the date of decree. As to the personal property of the firm which remained at the time of the decease of Fitts, its cost or value cannot be charged to the estate.

We come now to the account, as stated by the referee, of the partnership of 1866. Complainant states in his bill that no part of the earnings of this business was received by him, but that Fitts received the whole of it. In his testimony he says nothing on the subject, and there is no proof showing what amount of money was realized during 1866 by either of the partners. As the books are not before this court, we must take the statements of the report "that the *earnings* of the partnership in 1866 amounted to the sum of..................................... $2,449.38
Expenses of shop,............................ 15.35

Net earnings,........................... $2,434.03

Price and Wife et al. v. Hicks.

| | |
|---|---|
| Complainant's share, one-half,................. | 1,217.01 |
| Advanced to complainant,................... | 359.00 |
| Balance due him....................... | $858.01" |
| Interest is computed on this sum from 1st July, 1866, at eight per cent,................. | 497.64 |
| Total included in the judgment,.......... | $1,355.65 |

There are some peculiarities in this statement. First, that although some of the witnesses swore that they worked for the firm, there is nothing put down in the account as paid for their labor, and the whole amount of shop expenses for six months is fixed at $15.35. This is not very satisfactory; but in addition to this, the report does not show *how much money* was received by Fitts, and we are at a loss to know how much to charge him with. The *earnings* are stated to be so much, as "obtained from the books." The complainant is said to have received $359, but Fitts is not shown to have received any given sum. It would be unjust to charge the estate with the whole amount of the earnings, as shown by the books, because the earnings may be represented in accounts not collected. Indeed it appears by Hicks' testimony that Mrs. Fitts "collected some of the accounts" from the books *after* Fitts' death, and this was a portion of the "net earnings." Neither the testimony nor the report of the referee show anything against the estate in favor of the complainant for money collected by the deceased partner on account of the earnings of 1866. It is said the books appear to have been mutilated, but although this may enhance the difficulty of ascertaining the proper result, it does not warrant the charge against the estate of an amount of indebtedness for money received, in the absence of evidence that money was received. If there are accounts not collected, the surviving partner should collect them, if they are collectable, out of the debtors, and not out of the estate of his late partner.

The referee in his report intimates that a "portion of the property" has been alienated by Mrs. Price "in her own wrong." Whether the property thus disposed of was real or personal is not stated, and there is no evidence upon which this is reported save the allegation in the bill that Mrs. Price had disposed of one mule. The referee's statement that she had "deeded" the property, would imply that she had conveyed some real estate, but there is no evidence of this, and there is no legal or equitable reason for charging one portion of the property with money invested in another with the consent of the complainant himself and even by his own act. The estate is no more liable for the value of the property which may have been held by Mrs. Price in trust for Hicks, than it would be if the trustee had been an entire stranger.

One of the grounds of error assigned is that the court considered the testimony of Hicks the complainant as to communications between himself and his deceased partner. The testimony is given in the form of depositions. Whether upon the hearing any objection was urged against receiving this testimony does not appear, except as it may be included in one of the exceptions to the report, that it is "not sustained by any proper or sufficient evidence." It is perhaps unnecessary to consider the point as to the effect of receiving such testimony when no objection was interposed at the hearing upon this precise ground. We may remark, however, that the provision of the Code, (sec. 331,) which was in force as to this suit, is a *prohibition* against a surviving party giving evidence "in regard to any transaction or communication between" him and the deceased, "when the examination or any judgment or determination in such action or proceeding can in any manner affect the interest of such witness, or the interest previously owned or represented by him," unless the opposite party had been examined in his own behalf in relation thereto.

In the present state of the case upon the pleadings and

evidence, it would not be proper to enter a decree here, and we must therefore reverse the decree of the Circuit Court and remand the cause with directions that such further or amended pleadings may be had in the case as may be deemed necessary, and as the parties may be advised; and that such further proceedings may be had as may be conformable to law and the practice of the court and with this opinion.