T. L. WALKER, *Appellant*, v. HAROLD E. CLOSE, *Appellee*.

En Banc.

Opinion filed December 28, 1929.

Petition for rehearing denied February 10, 1930.

1104

1106

*Caraballo, Graham & Cosio,* for Appellant;

*Shackleford, Ivy, Farrior & Shannon,* for Appellee.

ANDREWS, Commissioner:

The appellant, complainant in the lower court, brought action against appellee, defendant in the lower court, to cancel and rescind a contract for purchase of real property, to recover the purchase money paid, to cancel certain notes outstanding and for a lien against said property for repayment of the purchase price. The lower court sustained a general demurrer to the amended bill of complaint.

The amended bill of complaint in substance alleges that

on or about June 15, 1925, complainant entered into a contract to purchase from defendant lot ten (10) Block E, Riverbend Subdivision, a subdivision then being developed by defendant, located in Hillsborough County, for the sum of $2,750.00, of which amount $550.00 was paid in cash, balance being payable quarterly in sums of $275.00 each, the last payment falling due June 15, 1927; that the defendant agreed, among other things, upon full payment of the purchase price, (1) to deliver an abstract and convey the land by warranty·deed, free, clear and discharged of all incumbrances, (2) to accomplish, without expense to complainant: (a) the installation on the streets adjoining said lands electric lights, water and gas, (b) the paving of street or streets and the laying of sidewalks and curbing on either side thereof, (c) the beautification of said streets and parkways with trees and ornamental shrubbery in keeping with its development of said land.

The complainant alleges that he had made all payments due on said lands down to and including the payment of December 15, 1926, and about April 1, 1927 (a few days before the next-to-the-last installment fell due), offered to pay the entire balance due, and demanded an abstract, which was furnished; that certain defects appeared in the title, pointed out in the bill, notice of which was given on April 7, 1927, with a demand to correct same; a similar request was made April 14, 1927; that on or about October 17, 1927, said defects not having been cleared up, and the improvements not having been installed, complainant tendered the balance of the purchase money and demanded the defects be cleared and improvements installed within thirty days from date thereof, or that defendant repay with legal interest the money paid on said contract in the amount of $2,200.00. The bill alleges that the defendant failed to perform said contract or repay said money.

The only assignment of error presented to this Court for review is that the trial court erred in sustaining the demurrer of defendant to complainant's amended bill of complaint.

A demurrer to a bill in chancery admits for the purpose of the demurrer all allegations of facts well pleaded. Rawls v. City of Miami, 82 Fla. 65, 89 So. R..351. Where under the allegations of a bill of complaint, a sufficient predicate is afforded for substantial relief, if sustained by evidence, a demurrer to the whole bill should be overruled. Boone v. Gay, 84 Fla. 589, 94 So. R. 501.

The demurrer being general and directed to the whole of the bill, the immediate question before us for consideration is that if there is any ground for equitable relief stated in the bill, a general demurrer to the bill should have been overruled. Leavine v. Belt Automobile Indemnity Association, 88 Fla. 553, 102 So. R. 768; Mitchell v. Mason, 65 Fla. 208, 61 So. R. 579.

There are, among others, two main grounds assigned and argued by appellant as reasons why he contends that the order of the lower court sustaining the demurrer should be reversed, namely: (a) that defendant could not, without material corrections, furnish a title "free, clear and discharged of incumbrances," and that due notice of such defects had been given several months prior to the date the last payment was due on June 15, 1927; (b) that the improvements agreed by Article V of the contract of purchase would be installed "without expense to purchaser" had not been complied with; that a tender to defendant was made of the amount due with demand that defects in the title be cleared and improvements installed several months before the bill in this case was filed on January 24, 1928.

On the other hand defendant, appellee here, maintains that complainant's objection to the title was without merit;

(1) as to the failure of the joinder of the wives of certain syndicate members in the trust deed to Harold E. Close; (2) that complainant was guilty of laches in declaring a rescission and bringing suit and that the time stated by complainant for performance of the contract was under the circumstances unreasonable; (3) that at the time demand was made complainant was in default on account of failure to pay installments of the paving tax; (4) that covenants for improvements were independent and not dependent; (5) that complainant's demand for installation of improvements and correction of title as to mortgage incumbrances and as to inchoate rights of certain wives of beneficiaries, were united in complainant's demand.

The first question we shall consider is: Was the title "free, clear and discharged of incumbrances?"

The amended bill of complaint alleges: (1) an unsatisfied mortgage of $71,250.00, as an outstanding first mortgage lien on the subdivision of about forty acres; a partial release therefrom was requested as to the said lot ten; (2) an outstanding paving certificate against the lot, dated August 1, 1926, in the sum of $1381.39; that the installation of electric lights, water and gas, sidewalks and curbing, and beautification of park-ways had not been accomplished; (3) that the title was objectionable because of an inchoate right of dower in the wives of the various members of the syndicate for whom defendant was acting as trustee.

"In every valid contract for the sale of lands, whatever may be the language in which it is couched, there is an implied undertaking to convey a good title, unless such an obligation is expressly excluded by the terms of the agreement.

"When the vender of real property expressly or by implication, agrees to convey a good title or market-

able title, that undertaking is discharged only by the conveyance of a title unincumbered and free from reasonable doubt as to any question of law or fact necessary to sustain its validity." Wheeler v. Sullivan, 90 Fla. 711, 106 So. R. 876; Holland v. Holmes, 14 Fla. 390.

In the case before us, the vendor agreed to convey the lot by warranty deed "free, clear and discharged of incumbrance." The third (3) question raised will be disposed of first.

We have examined the bill with the exhibits referred to in the same, including the "certificate of trust" with the attached "Syndicate Plan"; also Sections 5665 to 5668 inclusive Comp. Gen. Laws of Florida,—Generally referred to as the "Statute of Uses"—and we are of the opinion that title to lands in the subdivision in question vests in defendant, Harold E. Close as trustee, with power to sell and convey legal title. The "certificate of trust" shows that Close was to hold the land "in trust for the subscribers * * * in accordance with syndicate plan hereto attached" and that he would "hold said title and any and all proceeds from the sale of any part thereof in trust for the subscribers to said syndicate and faithfully account to them therefor."

The "affidavit" of B. L. Hamner, attached to the bill, purports to recite the purpose and effect of certain "quitclaim" deeds executed to Harold E. Close by the parties named as *cestui que trustent*. The quit-claim deeds have not been evidenced to us, but assuming that they were executed in the manner stated, it would add nothing to, nor take from the power already held by Close under the certificate of trust.

"A power of sale need not be conferred on a trustee in direct or express terms, but may be implied from the purposes of the trust." 26 R. C. L. 1285, Sec. 136.

The "certificate of trust" shows that only the beneficiary subscribers were to share in the 90% basis for profit and that Close should have 10% for his services as trustee. The only interest of Close, so far as is made to appear, was that he was to have ten per cent of the net profit on the sale of all lots not reserved by members of the syndicate, "as compensation for handling the syndicate and looking after the subdivision and preparation for sale."

This of itself would not disqualify Close as trustee. A reasonable compensation should be allowed to trustees for their services, care and responsibility incident to their position. Muscogee Lbr. Co. v. Hyer, 18 Fla. 698; Kay v. Bostwick, 83 Fla. 308, 91 So. R. 112.

In the case of Willey v. W. J. Hoggson Corporation, 90 Fla. 343, 106 So. R. 408, wherein the point raised was as to necessary parties to the suit, it was shown that the trustee, Fred L. Hall, was not only associated in interest as joint owner but held an interest in common with the other beneficiaries.

The trust in question here was not one granted, conveyed or consigned, but one which arose out of the declaration of Close—the person holding the legal title to the land. The "syndicate plan" provides that:

"It is hereby agreed that the property is to be deeded to Harold E. Close and he is to hold it in trust for the subscribers of the pool in accordance with their interests."

It was deeded to Close by L. R. Wood and thereupon Close executed the certificate of trust.

Section 5664, Comp. Gen. Laws of Florida, provides that all declarations and creations of trust and confidence of or in any lands shall be manifested and proved in writing, signed by the party authorized by law to declare or create such trust. So far as it appears from the record before us, the trust in the instant case was legally created, as evidenced in exhibit "C" to amended bill.

There is no prescribed form for the declaration of a trust; whatever evinces the intention of the party that the property of which he is the legal owner shall beneficially be another's is sufficient. 26 R. C. L. 1182, Sec. 19; 12 L. R. A. (N. S.) 548.

Complainant's counsel, in exhibit "B" to bill of complaint, admits that the deed from L. R. Wood and wife to Harold E. Close, "although absolute on its face appears to have been for the use of forty-two individuals comprising a pool or syndicate as shown by entries on pages 59 to 96 of the abstract."

The widow is dowable in Florida only of "all lands, tenements and hereditaments" of which her husband died "seized or possessed," or had before conveyed whereof she had not relinquished her right of dower as provided by law. Sec. 5493, Comp. Gen. Laws 1927. The common law prevails in Florida, except where modified by statute, and to be "seized or possessed" of a legal estate is essential to the right of dower, and a widow is not entitled to dower rights in lands to which her husband is only a *cestui que* trust; as where it is in the status of property in partnerships. Price v. Hicks, 14 Fla. 565; McMahon v. Russell, 17 Fla. 698; 19 C. J. 478, Sec. 69; 9 R. C. L. 577, Sec. 19.

Under the common law, dower is excluded from the estates of the *cestui que trust*. 2 Scribner on Dower (2nd ed.), page 400.

The only question presented on this phase of the case is:

Is the wife of a *cestui que trust* under the common law, which prevails in Florida, dowable of lands, title to which is in the name of a trustee for the use of the *cestui que trust?* We do not think so.

There is a distinction between an inchoate right of dower, which during the life of the husband is contingent, and that of dower in the equities of a *cestui que trust*. 2 Scribner on Dower, 6.

The amended bill, as above stated, alleges that the title is defective for the reasons: (1) that there is an unsatisfied mortgage covering this property, from said Harold E. Close to L. R. Wood securing the payment of notes totaling $71,250.00; (2) that the paving certificate issued by the City of Tampa dated August 31, 1926, for the sum of $1,381.39 with interest is an outstanding lien.

For convenience, these alleged defects (1) and (2) will be considered together. By the terms of the contract of purchase, it will be noted that vendee (appellant here) was to pay $2,750.00 for the lot, payable $500.00 in cash on June 15, 1925, and the remainder payable $275.00 quarterly in eight installments with the last falling due June 15, 1927. On the ''payment of the whole purchase price,'' the seller agrees to deliver an abstract of title and convey the lot by warranty deed ''free, clear and discharged of incumbrances.''

The time of payment is made the essence of the contract. In fact the contract as a whole is in the general or usual form used by developers of subdivisions.

In case of doubt as to the meaning of a written contract, the language is to be taken most strongly against the party using it. St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 So. R. 438. While, in construing a contract, ambiguous language is to be construed against the person using it, it should be given a meaning in accord with the

object in view. Brown v. Beckwith, 60 Fla. 310, 53 So. R. 542; West Yellow Pine Co. v. Sinclair, 83 Fla. 118, 90 So. R. 828.

The unsatisfied mortgage of $71,250.00 covering this lot with other property, for which a partial release was requested on April 7, 1927, constitutes an "incumbrance" on the title. April 14, 1927, appellant again pointed out these discrepancies and requested appellee "to correct these defects, which if done within a reasonable period of time, will enable Mr. Walker to close this transaction," and added, "We will co-operate in any way that we can to assist you."

The bill alleges that the lot in question was not free, clear and discharged of incumbrances, and that such condition was pointed out to Close more than three months before the last quarterly payment became due and that no release was procured or offered. Under these circumstances it could scarcely be said that complainant was guilty of laches such as would preclude his suit in equity, in view of the further fact that the contract of purchase is clearly executory.

Appellee contends that the payments of the "whole purchase price" including the last installment was made by the contract a condition precedent rather than a mere covenant independent or concurrent, in that "payment was expressly made of the essence of the contract."

This Court long since committed itself in the case of Sanford v. Cloud, 17 Fla. 532 (text 552) to the principle followed by nearly all courts, that:

"Covenants are always considered dependent unless the contrary intention appears. The correct rule upon the subject is, we think, announced by the Supreme Court of the United States in the Bank of Columbus v. Hagner, 1 Peters 464. That Court there says: 'In contracts of this description, the undertakings of the

respective parties are always considered dependent, unless a contrary intention clearly appears. A different construction would, in many cases, lead to the greatest injustice, and a purchaser might have payment of the consideration money enforced upon him, and yet be disabled from procuring the property for which he paid it. Although many nice distinctions are to be found in the books upon the question whether the covenants or promises of the respective parties to the contract are to be considered independent or dependent; yet it is evident the inclination of courts has strongly favored the latter construction, as being obviously the most just. The seller ought not to be compelled to part with his property without receiving the consideration, nor the purchaser to part with his money without an equivalent in return; hence, in such cases, if either a vendor or a vendee wish to compel the other to fulfill his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement on his part, or a tender and refusal. And an averment to that effect is always made in the declaration upon contracts containing dependent undertakings, and that averment must be supported by proof.' The language in this case is, that upon vendee doing certain acts, thereupon vendor will make a deed, etc. The acts were to concur and were dependent. Neither of the parties here, after a full performance by himself, expected or agreed to rely upon his remedy against the other.''
Does the amended bill allege and show a valid tender?

The amended bill alleges, and exhibits ''B'' and ''E'' substantiate, that complainant on April 7, 1927, notified defendant in writing that complainant ''was ready and willing to pay the balance due on said contract''; that on

April 14, 1927, complainant, through his attorneys, notified defendant "that unless the defects existing in the title as above set forth were corrected within a reasonable period of time, there would be no other recourse left to your orator but to ask for the return of his money and interest thereon"; and that June 15, 1927, the date for the last payment arrived, and "defendant did not tender and has not tendered at any time subsequent thereto a deed as provided in said contract." The amended bill was filed July 25, 1928. It is further alleged that complainant, on October 17, 1927, "tendered to said defendant the sum of Five Hundred Seventy-six and 50/100 ($576.50) Dollars, the balance due on said contract, including interest thereon at six per cent, and demanded that said defendant clear the defects in said title as pointed out in the opinion on title, and comply with the terms of said contract by installing electric lights, water and gas, and beautifying parkways" etc., within thirty days or to repay the amount of $2,200.00 and interest. As to whether or not this was a valid tender the Court has more than once recently expressed itself. This Court held in the case of Martin v. Albee, et al., 93 Fla. 941, 113 So. R. 415:

"The requirement of a tender of purchase money in a contract for the sale of lands does not in all cases mean a tender of money strictly valid at law but a present readiness, willingness and ability in good faith to perform the acts required provided the other party will concurrently do the things which he is required by the contract to do and notice by the former to the latter of such readiness, willingness and ability to perform."

See Shouse v. Doane, 39 Fla. 95, text 108, 21 So. R. 807, text 811.

As to whether or not a vendee should be required as a condition precedent to make total and final payment, and in case of defect in title to seek remedy at law for damages, attention is called to the following expression in above case:

"If the contract for the sale of land is mutual, supported by a consideration, fair and reasonable in all its terms and the vendee may not be amply compensated by damages at law for a breach of the agreement, the complainant should not be denied relief if he has complied with the agreements on his part to be performed."

25 R. C. L. 244-256.

It is clear that defendant, vendor, was required by the contract to present a warranty deed and an abstract showing a title "free, clear and discharged of incumbrances" concurrent with the last payment to be made by complainant, vendee.

"The rule is now thoroughly settled that the question of whether they are independent or dependent rests on the intention of the parties, to be determined from the sense of the entire contract rather than from any particular form of expression, or the order in which the stipulations occur in the instrument, the order of time in which the intent of the transaction requires performance being controlling. * * * In case of doubt covenants will generally be construed as dependent rather than as independent, since such a construction ordinarily prevents one party from having the benefit of the contract without performance of his own obligations." 13 C. J. 568, Sec. 539.

When two acts are to be done at one and the same time, neither party can maintain an action without performance, or an offer to perform, on his part. 13 C. J. 571.

"The later American cases hold that the fact that the covenants for intermediate payments are independent will not control the intent of the parties to make final payment conditional on complete performance. So where the vendee of land covenants to pay for the same by installments, and the vendor covenants to make him a title when the last installment is paid, the covenants of the vendee to pay the installments, except the last one, are independent covenants, but the covenant of the vendee to pay the last installment and the covenant of the vendor to make title are dependent covenants." 13 C. J. 571-572; 6 R. C. L. 860, Par. 248.

In the recent case of Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. R. 252 (text 254), involving a very similar question to this, the Court said:

"Where covenants are dependent, one party should not be compelled to pay out his money in strict performance of his own covenants, when the other party cannot or will not perform on his part material acts which are to be concurrently done and which are not merely subordinate or incidental but go to the entire consideration which supports the promise of the other party to pay. Otherwise the purchaser, although compelled to pay the purchase price, would not receive what he stipulated to purchase."

Directing our attention to the covenant for improvements, it is noted that Article V of the contract reads as follows:

"THE SELLER covenants and agrees that it will in its development of SAID LAND, without expense to the PURCHASER:

"(a) Accomplish installation on the streets adjoining SAID LAND of electric lights, water and gas;

"(b) Accomplish paving of said street or streets and the laying of sidewalks and curbing on each side thereof;

"(c) Beautify said streets and parkways with trees and ornamental shrubbery in keeping with its development of SAID LAND."

This is practically the same language used in the contract involved in the recent case of Sun City Holding Co. v. Schoenfeld, *supra*. In that case the Court used the following language:

"The complainant below did not agree to pay the sums above mentioned for the lots as they were when the contracts were made, but as they would be when the stipulated improvements had been accomplished. For those sums the complainant is entitled to receive, not unimproved land in the condition in which it was when the contracts were executed, but lots improved by the installation of streets and sidewalks on the adjoining streets, electric lights, and water facilities, and with parkways adjoining said lots beautified with trees and ornamental shrubbery in keeping with the development of Sun City. That complainant intended to buy, and that defendant agreed to sell, her lots so improved is clear from the contents of the contract."

In the above case as in the present one, the deferred payments were distributed over an extended period of time; no specific time being stipulated in the contract as

to when the improvements should begin or within which they should be completed, and the sole reference thereto being that the seller agreed to accomplish the same "in its development of the subdivision without expense to purchaser." This would obligate the defendant to "accomplish" the improvements named within a reasonable time, under all the circumstances. "Accomplish" means "to bring to an issue of full success; to perfect; to perform; to execute fully as, to accomplish an object, or a promise."

It is contended by defendant that complainant's bill fails to show, as a condition precedent to bringing suit, that he has paid "specific tax bills for paving and improvements amounting to One Thousand ($1,000.00) Dollars," in compliance with the provisions of Article II of said contract reading as follows:

> "The PURCHASER further covenants and agrees to pay all taxes, charges and assessments levied against SAID LAND subsequent to the year 1925, and PURCHASER further covenants and agrees to pay special tax bills for paving and improvements amounting to One Thousand & 00/100 ($1,000.00) Dollars, which said sum has been deducted from sale price of said lot or lots. This amount being subject to adjustment when tax bills are issued."

Paving assessments are levied against the property itself and follow it, and remain a lien upon it thereafter, subject to suit *in rem*, until paid by the holder of the fee. It was not necessary that purchaser should pay the $1,000.00 before or at the time of requesting a deed, as he had assumed and agreed to pay that amount and no more. He could pay it in the manner required by the city.

The words "tax bills" may mean any or several assessments imposed by governmental authority—State, county

or municipal. It is clear, however, that complainant is obligated to pay all taxes, charges and assessments beginning with the year 1926, which are evidently ordinary taxes; and that "special tax" bills "for paving and improvements" were agreed to be paid by complainant "amounting to" One Thousand Dollars, which sum was "deducted from the sale price" of the lot. Defendant argues, first, that under this contract purchaser was to pay all "improvement" assessments even though it amounted to over the One Thousand Dollars, while complainant contends that under the contract he was to pay for improvement assessments "amounting to" One Thousand Dollars, and in case they exceed that amount, at time of final payment, and adjustment was to be made on his purchase price; that the paving lien alone amounted to $1,381.39, which was $381.39 in excess of the $1,000.00; thus entitling complainant to a credit of the $381.39 on his last two payments of $275.00 each. The term, "amounting to" as used herein, means "to rise or reach to, by an accumulation of particular sums or quantities; to come to in the aggregate or whole; as, the bill amounts to ten dollars,"—Webster's New International Dictionary. It is apparent, not only from the above expression, but the whole contract, that it was the purpose and intent to limit the liability of complainant for "paving and improvements" to One Thousand Dollars, and this would include other "improvements" in addition to paving. The defendant vendor had two years in which to install the improvements before the last payment fell due and the contract unquestionably contemplates it. Where it is alleged that notice was given over three months before the last installment of June 15, 1927, was payable, the time for which final notice was given for performance on October 17, 1927, would not be under the circumstances unreason-

able, as appellant was entitled to a complete performance on or by June 15, 1927.

It appears that the complainant was within his rights in declining to make the last payment and thereafter seek redress by independent suit for failure to either make a good title or "accomplish" the improvements named.

The complainant offers in his bill to place the defendant in *status quo,* and it does not appear that complainant, if he made final payment, would be amply protected in a suit for damages in the amount of his total payments of $2,200.00, and interest thereon. Up to date of filing the amended bill, it does not appear that complainant had received anything for his money except the bare contract, which is executory. In the case of Sun City Holding Co. v. Schoenfeld, *supra,* this Court, in discussing the question as to whether complainant, purchaser, had a complete remedy at law for his damages, quoted approvingly from the case of Fisher v. Tatum Holding Co. (D. C.), 14 Fed. (2nd) 656, in which Judge Call said:

"The improvements contracted to be made by the seller were a part of the consideration moving to the buyers for making the contract to purchase, and to say that the purchasers should first comply with their contract and make the deferred payments, and then sue the seller at law for damages, is, it seems to me, unreasonable, and affords very inadequate relief to them."

To the same effect see De Bisschop v. Crump, (C. C. A.) 24 Fed. R. (2nd) 807, wherein four months was held to be a reasonable time "within which to make and complete" improvements of a similar nature involved in a contract there in litigation which presented the identical question here under consideration.

A very marked distinction between (1) the right of a vendee after a contract has been executed by a conveyance of the land, and (2) his right, while the contract is in the executory state, is that in the first case defects in the title which expose him to the hazard of litigation or the threat of litigation, do not generally entitle him to any relief against his vendor. It is otherwise, if he is under an executory contract; the vendee in such a contract will not be required to accept the conveyance of a title so clouded by defects as to expose him to the hazard of litigation, or which may require him to resort to litigation, in order to clear his title from outstanding claims or defects. 57 A. L. R. 1300.

The order of the lower court sustaining the defendant's demurrer to complainant's bill of complaint should be reversed and it is so ordered.

Reversed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the order of the court below sustaining defendant's demurrer to complainant's bill of complaint should be, and the same is hereby, reversed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN, AND BUFORD, J. J., concur.

ON PETITION FOR REHEARING

ANDREWS, Commissioner:

The complainant may as a rule allege as many different grounds for the rescission or cancellation of a contract as

he may desire and the bill is not demurrable because it does not show on which ground he intends to rely, and failure to prove one of the grounds alleged will not prevent relief as to the others.

ON PETITION FOR REHEARING.

Opinion filed February 10, 1930.

ANDREWS, Commissioner:

The motion for a rehearing appears to be based upon the assumption that the Court failed to consider one of the points raised by appellee's demurrer, namely: That the bill of complaint is defective in that complainant's demand for an installation of improvements and correction of title as to mortgage encumbrances and as to inchoate right of dower of certain wives of beneficiaries, were united in one demand of complainant.

The alleged defects in title were considered separately in the opinion, one of which was not well founded; the other grounds appeared good as against a demurrer. Therefore, it became unnecessary to analyze defendant's demurrer as to the defects being "united in one demand"; in fact, it appears that the defects were pointed out separately in the demand and notice to appellee.

We know of no rule that where more than one fact is relied upon and alleged in a bill as grounds for cancellation and rescission of a contract, that it will be fatal on demurrer where such objections to the title are included in one demand or notice to the opposite party, and we have not been favored with any authorities to that effect. The authorities examined appear to hold the opposite view.

In 3 Black on Rescission and Cancellation (2nd Ed.), Sec. 664, the general rule appears to be as follows:

1126

"The complainant may also allege as many different grounds for the rescission or cancellation of the contract as he may desire, and the bill is not demurrable because it does not show on which ground he intends to rely, and failure to prove one of the grounds alleged will not prevent recovery on the others."

See also, Murphy v. Crowley, 140 Cal. 141, 73 Pac. R. 820; Fields v. Helms, 70 Ala. 460.

When the bill sets up a case of actual fraud and makes that the ground of the prayer for relief, the complainant is not, in general, entitled to a decree by establishing some one or more grounds quite independent of fraud. 9 C. J. 1249. There is no fraud alleged in the amended bill.

The petition for rehearing is denied and it is so ordered.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered and ordered by the Court that the petition for rehearing in this cause should be, and the same is hereby denied.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.