EUGENE C. HARRINGTON, APPELLANT, VS. WILLIAM RUTHERFORD AND ROSE KIEBEL, APPELLEES.

38  321
51  456

1. As a general rule, fraud can not be predicated upon a mere promise not performed.

2. To authorize the rescission of a contract on the ground that it was procured by false representations, the false assertions must be in regard to existing facts, and the non-performance of a mere promise, without fraudulent intent, to do something in the future, in consideration of the execution of the contract, will not be sufficient to authorize its rescission.

Appeal from the Circuit Court for Dade county.

The facts are stated in the opinion.

*Robbins & Graham*, for Appellants.

First Ground. Bill is not to enforce contract shown as Ex. H, but to set aside deed made by complainant to defendant on the ground of fraud.

Second Ground. The deeds were not made for a good consideration, but the contract, "Ex. H" was used to

entice complainant to make the deeds, and defendant having gotten the deeds, never paid the consideration.

Third Ground. The bill does charge Rose Kiebel with knowledge of the fraud by which defendant obtained his deed from complainant. It charges Rose Kiebel with being a joint actor with Rutherford in procuring deed from complainant without consideration.

Fourth Ground. See 22 Fla. 561, 2 Story, 11 Note O. Bill does not allege possession in complainant, but it prays that Rose Kiebel be decreed to convey same back to orator, deed having been obtained by fraud. Harrington has the equitable title.

Fifth Ground. Van Allen is not a necessary party, as he has no interest in the decree. 25 Fla. 366.

Sixth Ground. Van Allen bought the fifteen acres, and as part of the consideration was to make various improvements. He failed to make them and agreed to deed back to Harrington, the latter making him a mortgage to reimburse him for such improvements as he *had* made. The mortgage was made but the deed instead of being made to Harrington was by his direction made to Rutherford.

### WANT OF EQUITY.

Seventh Ground. We claim there is an equity to compel a party who has procured title to land by fraud to reconvey it to grantor. (Story, Bahan vs. Turnbull, Mich. 1891 Am. Dig. 1526, sec. 127). Ch. 4032, p. 969, Revised Statutes, makes it a crime to obtain money or personal property by false promises with intent to defraud. Ecole Tamajo et al. vs. S. J. Schenk et al. & Fla. Fruit Co. prays to set aside deeds made by complainant to defendants, etc. Transferred to U. S. Court.

Equity jurisdiction for rescission and cancellation arises—"secondly, for setting aside executed conveyances—where it is necessary to replace the parties in statu quo;" and in such cases, though pecuniary damages might be in some sense a remedy, yet, if fraud be complained of, there is jurisdiction in the Court of Chancery. The mode of relief under this equity may be by cancellation of the instrument or reconveyance of the property which has been unduly obtained. (Adams' Eq., 358-9 & 360).

In our bill we invoke this equity to compel a reconveyance of the land obtained from complainant by the fraud and deceit of Rutherford.

"In * cases of fraud the Court of Chancery has concurrent jurisdiction with the courts of law; and this jurisdiction will be exercised against any one who has abetted or profited by the fraud, and after any length of time,—and even the innocence of a party who has profited by the fraud will not entitle him to retain the fruit of another man's misconduct, or exempt him from the duty of restitution." (Adams' Eq. 362 and 363).

### AS TO WHAT CONSTITUTES FRAUD.

(a) Procuring an act to be done by wilful misrepresentation (Ad. Eq. 364). It must be "false within the knowledge of the party making it, reasonably relied on by the other party and constituting a material inducement to his act." (Ad. Eq. 364).

In the case at bar complainant was induced to part with his property by Rutherford's representation in his contract that he would pay the notes. The presumption is that Rutherford's intention at the time he delivered the agreement to take up the notes was fraudulent, inasmuch as he did not perform the agreement.

The payment of the notes was to be the real consider-ation, and Rutherford, having secured the deed, never gave the consideration. This was a palpable fraud.

It is contended that Rutherford's *contract* to pay the notes is the consideration for the deed instead of his performance of the contract being the considera-tion. Then, the bare paper evidencing a broken con-tract (especially in view of Rutherford's insolvency) would not be an adequate consideration to support the deed. "While inadequacy of consideration of itself is not a ground of relief, unless so gross as to shock the conscience, when connected with suspicious circum-stances, it affords a strong, if not conclusive evidence of fraud." (Cofer vs. Moore, Ala. 6 S. R. 306).

The case of Vincent vs. Walker, (Ala.) 9 S. 382, is one in which a deed is set aside for want of considera-tion, under circumstances raising no greater equity than the present. The court said there was no consid-eration in this case, and likewise in our case, there is no consideration. That is, the consideration is en-tirely unsubstantial. Harrington has received no con-sideration of benefit to him, neither of detriment to Rutherford, which are the essence of a consideration. Burke vs. Taylor (Ala.) 10 So. 129, is another case in which a deed is set aside for no consideration.

Where defendant procured a satisfaction of a judg-ment from plaintiff upon representations that he had an interest in a certain firm which would enable him to pay it; and it turned out he had no such interest, the bill was held good on demurrer. Kley vs. Healey (Am. Dig. 1892–1777, sec. 184).

A deed was set aside for fraud where it appeared that defendant gave a certificate of deposit issued by a private banking firm which he represented as solvent,

but which he really believed at the time was not solv-ent, and the deposit was not paid. (Ill.) 1892 Am. Dig. 1777 sec. 186.

As to Rose Kiebel not being a party to the fraud by which the deed was procured from Harrington. It was held in the case of Sistare vs. Heckscher (Sup.) 15 N. Y. S. 737–1892 Am. Dig. 1779 sec. 193, that where the husband procured a conveyance of his wife's prop-erty to the husband's creditor by representations that the deed was a mere formality and would not be re-corded, but would tide him over his troubles until a reconveyance should be had in a short time; and it ap-peared that the creditor had not known of or author-ized such representations; the deed was set aside as procured by fraud, although the grantee did not par-ticipate in or have any knowledge of the fraud. See also ante from Adams' Eq. as to third parties not be-ing allowed to profit by a fraud although ignorant of its perpetration.

Where a man conveyed land to his wife to enable the latter to devise it to a certain university, and the wife's will was refused probate, the husband brought suit against his wife's heirs to set aside the convey-ance. The relief was granted on the ground that the land was conveyed only on the agreement that it was to be devised to the university, and the deed would be set aside for failure of consideration (Barker vs. Smith, Mich. 1892 Am. Dig. 1791, sec. 258).

The same principle is applicable to the present case, as Harrington deeded to Rutherford upon the agree-ment that certain notes were to be paid, and the agree-ment not being carried out, there was a failure of or absence of consideration.

The reports are full of cases where parents have con-

veyed property to their children in consideration of support for the balance of their lives, and the deeds have been set aside where the support was not supplied, the ground being failure of consideration. Am. Digest 1892, 1791, sec. 259; Am. Digest 1892, 1769, sec. 145; Am. Digest 1892, 1768, sec. 141; Am. Digest 1892, 1767, sec. 133; Am. Digest 1892, 1525, sec. 123, and 1539, sec. 205.

Lamb vs. Lamb, (N. J. Ch.) 1892, 1793, sec 267, is a case of a deed set aside where the consideration was "broken promises."

If Rutherford did not intend to pay the notes at the time he procured Harrington to make him the deed, this would without question be a fraud sufficient to set the deed aside (Am. Dig. 1892, p. 1792, sec. 264) and his intentions must be gathered from his conduct at the time and subsequently. A failure to perform his agreement to pay the notes (whatever his intentions at the time of his agreement) also raises an equity to cancel the deed for failure of consideration (see ante) 1891 Am. Dig. 1531, sec. 154.

As to Rose Kiebel's rights as a third party, see 1892 Am. Dig., p. 1796, sec. 285, where innocent purchasers can not profit by a fraud even in case of laches of plaintiff.

A case of procuring a deed and then failing to deliver the consideration is that of Parsons vs. Parsons, (Kan.) 1891 Am. Dig. 1527, sec. 136. The deed was made and recorded and the note, which was to be the consideration, was refused unless plaintiff did something else. The deed was set aside for fraud in procuring it.

The principle is the same in the present case, where the deed was procured by a proviso in writing to pay

certain notes and the notes were not paid. The present case is even stronger, as the defendant who made the promise is insolvent, and there would be no substantial recovery from him at law for breach of contract.

Where plaintiff deeded land to a nephew and as part of the same transaction the nephew executed an agreement to support plaintiff during his life, and the nephew dies, his heirs failing to support plaintiff, the deed was set aside because it was made on condition of supporting plaintiff, (Morgan vs. Loomis, Wis. 48, N. W. 109; 1891 Am. Dig. 1539, sec. 205).

Applying the principle of the above to the present case, the deed was made to Rutherford and as a part of the same transaction the contract was given by Rutherford to pay the notes. On failure to pay the notes the deed should be set aside as in the case above cited.

Having been trusted with the deed defendant failed to perform the consideration and conveyed the land to Kiebel. This was a palpable fraud on plaintiff, who should be restored to the possession occupied before he was induced to part with his deed.

*Geo. P. Fowler*, for Appellee.

MABRY, C. J.:

The bill in this case filed by appellant against appellees, alleges that the former, at and before the transactions hereinafter set forth, was owner in fee of eighty-five acres of land consisting of two tracts, one of seventy acres, and the other of fifteen acres, and both properly described. That complainant and defendant Rutherford had been jointly interested in a steamboat enterprise as partners, the latter being a si-

lent partner, and being indebted had executed notes by complainant as principal, and endorsed by Rutherford and one P. W. Merritt, the latter being an accommodation endorser and a friend of complainant. The notes referred to, being three in number, are described. That being desirous of protecting his friend Merritt, and of being relieved of the obligation to pay said notes, complainant entered into an agreement with Rutherford to convey to him the eighty-five acres of land mentioned, if he would pay said notes. That the fifteen-acre tract had been conveyed to one VanAllen, a part of the consideration being that he should make certain improvements on the land, and having been unable to make all the improvements, VanAllen had agreed to reconvey the fifteen-acre tract to complainant for $450, for which the latter was to execute his note, secured by mortgage on the place, it being worth much more than the sum mentioned. That the note and mortgage were executed, but instead of having VanAllen to convey the land back to complainant, had him to convey it to Rutherford in pursuance of the said agreement with him to pay the notes. Complainant conveyed the seventy-acre tract to Rutherford, and he was to assume the mortgage given by complainant to VanAllen. The bill further alleges, using its language, "and now the defendant Rutherford, conspiring with the defendant Rose Kiebel, who is a member of Rutherford's family, did cheat and defraud your orator into delivering, and procuring to be delivered, to him without any consideration the deeds to the land aforesaid in this wise; the said Rutherford had prepared and sent to orator a typewritten agreement in which he promised to pay said notes as aforesaid, and by the use of said

writing procured orator to send on and deliver to him said deeds. Said writing is hereto attached as an exhibit (exhibit H). Having received said deeds, the said Rutherford at once conveyed said land to the defendant Rose Kiebel, and then utterly refused and neglected to pay said notes. Wherefore, by means of the wicked devices, coven and fraud of the defendants, orator has parted with the title to his lands, and has not been relieved from his obligation to pay the notes hereinbefore described, endorsed by his friend Merritt as aforesaid." The agreement in writing, mortgage and deeds are referred to as exhibits, and copies are filed with the bill. It is also alleged that the mortgage which complainant had given to VanAllen on the fifteen-acre tract was not recorded, and had been surrendered to complainant upon Rutherford's representation that he had paid it, but complainant found from the records of Dade county that Rutherford had executed a mortgage for $450 to VanAllen on the fifteen-acre tract, and this mortgage had been assigned by the latter to Rose Kiebel. That Rutherford was, at the time of the transactions complained of and the filing of the bill, insolvent, and executions against him had been returned unsatisfied. It is alleged that there was a pineapple plantation on the land and was liable to go to waste, and it was in need of care by the rightful owner, and there was danger that the products of the property would be appropriated and sold by defendants for their own use, and they were not solvent.

The prayer is for a receiver, that defendants be enjoined from conveying, mortgaging or otherwise encumbering the property, and that the deeds from complainant to Rutherford, and from him to Rose Kiebel, be declared null and void. Also that Rose Kiebel be

decreed to convey to complainant the fifteen-acre tract of land conveyed by Van Allen to Rutherford, and by him to her; and for such other relief as will place complainant in the position he occupied with respect to said property before he was induced to part with the title as alleged in the bill.

The court sustained a demurrer to the bill on the ground that it did not make such a case as entitled complainant to any discovery or relief in a court of equity.

The writing marked exhibit "H," by the use of which, it is alleged, the defendant Rutherford procured the deeds to the land to be delivered to him, is dated the 21st of February, 1891, and the deed to him from Harrington for the seventy acres bears date February 10th, 1891. The deed from Van Allen to Rutherford is dated February 21st, 1891. The bill states, in effect, that by the use of the writing mentioned the deeds were procured to be delivered, and the allegation as to the delivery must, on demurrer, control, though the date of one of the deeds is prior to the writing marked exhibit "H," as deeds take effect only from their delivery. We must conclude from the statements of the bill that complainant Harrington and defendant Rutherford were equally liable for the notes, and that either, or both of them if necessary, could have been called on by the holders to pay what was due thereon. They were interested as partners in a steamboat enterprise, and being indebted executed the notes, three in number, signed by the one as principal, and endorsed by the other and one Merritt. As between Harrington and Rutherford, they were equally liable as principals to pay the notes, as they were given for a joint indebtedness due from both. The notes

amounted to over twelve hundred dollars, besides interest, but the actual value of the land deeded to Rutherford is not shown. A payment of the entire amount of the notes by Rutherford would include over six hundred dollars justly due by Harrington in an adjustment of the indebtedness between the two, and there is nothing stated in the bill to negative the conclusion that such a payment would be a good and sufficient consideration for the conveyance of the land. Rutherford did not, however, pay the notes, but entered into a written agreement with Harrington to pay them. This agreement, made an exhibit to the bill, recites that divers business transactions had taken place between the parties and that Rutherford had made advances in money to Harrington on agreements, and in order to cancel the same and all matters of business then unsettled between them, it was agreed on the part of Rutherford that he would assume and pay off the notes referred to, and which, it is recited, were then in suit against him in the Circuit Court of Putnam county. The following is the concluding clause of the agreement: "Now, therefore, for the consideration aforesaid I, the said William Rutherford, do hereby agree to and with said E. C. Harrington to assume and pay off said notes and all costs and interest thereon, and release the said Harrington and Merritt from any and all responsibility therefor and guarantee the same." There is nothing in the agreement itself to show that Rutherford assumed to pay the notes and protect the other parties liable thereon in consideration of the conveyance of the land, but the bill alleges that Harrington entered into an agreement with Rutherford to convey to him the land, if he would pay the notes; and it is further stated that the land was con-

veyed in pursuance of the agreement to pay the notes. Conceding that the land was conveyed in pursuance of an agreement to pay the notes, and that the written agreement marked exhibit "H" was executed and accepted in consideration of the conveyances of the land, it is apparent that a good and sufficient consideration is shown, and the sufficiency of the bill must depend upon the alleged fraud in procuring the delivery of the deeds by the use of the written agreement to pay the notes.

As a general rule fraud can not be predicated on a mere promise not performed. As stated in one case, "to be available, there must be a false assertion in regard to some existing matter by which a party is induced to part with his money or his property. In morals the failure to perform a promise may be without excuse or justification, but in law false representations to authorize the recission of a contract must be made in regard to existing facts." Perkins vs. Lougee, 6 Neb. 220. The authorities establish the rule that ordinarily a promise to do something in the future, though made by one party as a representation to induce another to enter into a contract, will not amount to a fraud in a legal sense, though the promise subsequently and without excuse be broken and unfulfilled. Love vs. Teter, 24 W. Va. 741; Fouty vs. Fouty, 34 Ind. 433; Burt vs. Bowles, 69 Ind. 1; Farrar vs. Bridges, 3 Humph. 565; Long vs. Woodman, 58 Maine, 49; Grove vs. Hodges, 55 Penn. St. 504; Chicago, Texas & Mexican Central Ry. Co. vs. Titterington, 84 Texas 218, 19 S. W. Rep. 472; Feret vs. Hill, 15 C. B. 207.

The bill before us shows that the complainant Harrington, being desirous of relieving himself from the payment of the notes, and of protecting his friend

Merritt, entered into an agreement with Rutherford to convey him the land in question, if he would pay the notes, and that the land was conveyed in pursuance of this agreement to pay the notes. It is not shown that complainant was induced to enter into this agreement by any false representations or fraudulent practices whatever. It is stated that the defendant Rutherford, conspiring with the other defendant, Rose Kiebel, did cheat and defraud complainant into delivery and procuring to be delivered the deeds to the land, but how this was accomplished is explained: Rutherford prepared and sent to complainant a typewritten agreement assuming to pay the notes, interest and all costs of suit, and by the use of this writing procured complainant to send on and deliver the deeds. From this we are not warranted in assuming that Rutherford made any statements or representations other than to prepare and send to complainant a typewritten agreement assuming to pay the notes, and this was in fact the agreement, as the bill states, in pursuance of which the land was conveyed. Rutherford was at the time insolvent, as it appears, but no representations were made as to his condition in this respect, and complainant was not misled by false statements as to it. The agreement by its very terms contains a promise to do something in the future—pay the notes and guarantee Harrington and Merritt against all liability thereon—and under the rule stated the bill fails to make a good case on the theory that the deeds were fradulently procured to be delivered. The case designed to be stated by the pleader, no doubt, was that Rutherford, at the time he prepared and sent the written agreement promising to pay the notes, did so with the design of cheating and defrauding complainant Harrington into de-

livery of the deeds by means of the false written promise, and that there was no intention on Rutherford's part at the time of ever performing the promise, but used it merely as a false pretense to induce the delivery of the deeds, and that in the accomplishment of this design Rutherford conspired with Rose Kiebel to accept a title to the land when deeded to him, and thereby put it beyond the reach of legal process, and that such scheme was accomplished by the use of the written promise. If such a case had been stated in the bill, a different question would be presented, in reference to which we need not express an opinion. Miller vs. Howell, 1 Scam. 499, S. C. 32 Am. Dec. 36; Gross vs. McKee, 53 Miss. 536; Dowd vs. Tucker, 41 Conn. 197; Chicago, Texas & Mexican Central Ry. Co. vs. Titterington, *supra.* Pleadings are to be construed most strongly against the pleader, and it devolves upon a complainant to state a clear *prima facie* case by positive averments.

Our conclusion is, that the demurrer was properly sustained to the present bill, and the order appealed from will be affirmed.

Ordered accordingly.