MARION A. NOLAN, a Widow, v. E. C. LUNSFORD, E. CLAY SHAW and J. L. SIBLEY.

196 So. 193
En Banc
Opinion Filed April 30, 1940
Rehearing Denied May 28, 1940

*Redfearn & Ferrell,* for Appellant;

*Sibley, Giblin & Schroeder,* for Appellees.

CHAPMAN, J.—On July 21, 1938, plaintiff below filed in the Circuit Court of Dade County, Florida, a suit to foreclose a vendor's sale agreement covering certain lands situated in Dade County, Florida. The vendor's sale agreement was dated November 10, 1923, and was from The Bay Biscayne Improvement Company, vendor, to D. H. Griffiths, vendee. The balance due on the purchase price was evidenced by promissory notes given by the vendee to the vendor.

The Bay Biscayne Improvement Company conveyed the property described in the vendor's sale agreement by warranty deed, subject to the vendor's sale agreement and subsequent conveyances were made of the realty, as well as successive assignments of the vendor's sale agreement and transfer of the notes representing the balance due on the purchase price. The plaintiffs to this suit are the owners of the land described in the vendor's sale agreement and the purchase price notes, and D. H. Griffiths assigned

the vendor's sale agreement and the same was successively assigned until the same is now owned by Marion A. Nolan.

The material portions of the vendor's sale agreement for a decision in this case are, viz.:

"That the party of the first part, for itself and its successors, in consideration of the sum of Nine Hundred Fifty and no/100....Dollars, to it in hand paid, the receipt whereof is hereby acknowledged, and for other good and valuable considerations, does hereby covenant, promise and agree to and with the said party of the second part, his heirs and assigns, subject to the conditions, limitations and restrictions hereinafter set forth, to make, execute and deliver to said party of the second part, his heirs and assigns, a good and sufficient warranty deed of conveyance to the following described land, situated in Dade County, State of Florida, to-wit: Lot Four (4) of Block Seven (7) of San Marco an island in Biscayne Bay, according to plat thereof recorded in Plat Book 9, at page 21 of the Public Records of Dade County, Florida; and the said party of the second part, his heirs and assigns hereby covenants and agrees to pay the said party of the first part, its successors and assigns, the further sum of Thirty Eight Hundred....Dollars in the manner following: Four Hundred and Seventy-five Dollars each and every six months from the date hereof for 30 months, and Fourteen Hundred Twenty-five Dollars 36 months from date hereof until the balance of Thirty-eight Hundred....Dollars shall have been paid, said deferred payments being evidenced by promissory notes, bearing six per cent per annum interest from 11/10/24 with provisions for reasonable attorney's fees, in the event they should be placed in the hands of an attorney for collection.

"The said second party hereby agrees and binds himself, his heirs and assigns to regularly and seasonably pay each

and every one of the payments aforesaid, also all taxes and assessments levied against said real estate subsequent to the year 1924. On the failure of the party of the second part, his heirs and assigns to so pay said taxes and assessments or any part of them, the same may be paid by the party of the first part, its successors and assigns, and together with eight per cent per annum interest thereon charged to the party of the second part, his heirs and assigns as a part of the consideration to be paid for said real estate. * * *

"The grantor hereby agrees and binds itself, its successors and assigns to fully and completely construct said Island in accordance with its plans and specifications, which are as follows:

"Prior to Dec. 31st, 1926, the Company, its successors or assigns, will build a permanent concrete sea-wall around the entire Island of a type approved by the United States Engineers, and will also build permanent bridges and causeway connecting all the Venetian Islands with Miami and Miami Beach, Fla., prior to the date aforesaid. All streets shown on plat aforesaid are to be paved full width, that is from curb at edge of parkway to curb of parkway opposite. There shall be constructed a five (5) foot sidewalk in front of all lots; there being a three (3) foot strip of land between the lot line and the sidewalk which is to be used for public utilities; from the outer edge of the side-walk to the street there shall be left a space to be used as a parkway for the planting of suitable ornamentals (trees, shrubs, etc.) as may be satisfactory to the grantor, its successors, or assigns. A complete water supply shall be installed, of material and specifications, to be approved by the City of Miami Beach Water Company's superintendent or other equally competent engineer. A complete underground conduit system to carry wires for lighting,

power and telephone, shall be installed together with all necessary ornamental street lights; all materials to be used and plans for construction to be approved by the Engineer of the Miami Beach Electric Company, or an equally competent engineer, and no poles shall ever be erected in any of the streets or on any of the lots on this island without the consent of the grantor, its successors or assigns. A complete system for the distribution of gas shall be installed by the grantor, its successors or assigns, as soon as it is possible and practicable to get the necessary connections, either from Miami or Miami Beach. The grantor, its successors or assigns, will cause the Island to be carefully graded in its entirety and will plant grass, trees and shrubs to thoroughly and artificially beautify said property.

"The party of the second part hereby covenants and agrees that the time of payment of each and every installment, or promissory note, herein mentioned and interest thereon, together with all taxes, assessments, etc., of any nature whatsoever for which the purchaser may be liable and which the grantor, its successors or assigns, shall have paid, shall be the essence of this contract; and that failure to make any of such payments when due shall render this contract null and void, in which event all payments made on the same shall be forfeited to the party of the first part, its successors and assigns, as liquidated and stipulated damages for rent, and not as part payment of any amounts covered by this contract; and also, in which event, the party of the second part, his heirs and assigns, shall become a tenant or tenants of said real estate, at will, and the party of the first part, its successors and assigns, may at its or their option, immediately re-enter and take possession of said real estate without notice. In case legal proceedings shall become necessary to enable the party of the first part,

its successors and assigns, to retake possession of said real estate, the party of the second part hereby agrees for himself, his heirs and assigns, to pay all costs, damages and reasonable attorney's fees which may be incurred by the said party of the first part, its successors and assigns, in such legal proceedings."

The defendants filed a motion to dismiss the bill of complaint seeking a foreclosure of the vendor's sale agreement on the ground largely, that the bill of complaint was without equity. The lower court entered an order overruling and denying the motion to dismiss, and the defendant subsequently filed an answer and counter claim and the prayer of the counter claim was for an accounting and that a decree be entered to cover sums, with interest, paid on the vendor's sale agreement and that a lien be adjudicated against the property to enforce the payment for the amount that the court should decree as a lien. The lower court sustained a motion to strike the counter claim, when an answer was filed and, by stipulations as to facts signed by counsel for the parties, the lower court entered a decree of foreclosure for the balance due on the purchase price of the vendor's sale agreement and ordered the sale of the property to satisfy the amount decreed to be due.

The lower court received evidence about the improvements contracted to be made and performed under the vendor's sale agreement and from this evidence found that the value of the improvements not performed under the terms of the vendor's sale agreement was the sum of $400.00, and a credit for said amount allowed on the amount found to be due on the purchase price of the property. From this final decree an appeal has been perfected to this Court and a number of the rulings of the lower court assigned in this Court as reversible error.

It is contended that the bill of complaint filed in the lower court was without equity and that the lower court erred in its order overruling and denying the defendant's motion to dismiss. We have carefully considered the allegations of the bill of complaint and hold that the same contained equity and the lower court was without error in making and entering the order denying the motion of the defendant to dismiss. See Schmidt v. Kibben, 100 Fla. 1684, 132 So. 194; Miami Bond & Mortgage Co. v. Bell, 101 Fla. 1291, 133 So. 547; Burnett v. Dollison, 125 Fla. 254, 169 So. 665.

The next question to be determined is whether or not the covenants, *supra,* appearing in the vendor's sales agreement are dependent or independent. It is the contention of counsel for appellant that the covenants, *supra,* are dependent and it was not the legal duty or obligation of the defendants below to pay the balance due on the purchase price of the property, nor did the plaintiffs below as a matter of law have the right to maintain their bill to foreclose the vendor's sales agreement to recover the balance due on the purchase price until and when the vendor, its successors or assigns, had built or constructed the island in Biscayne Bay according to certain plans and specifications, which included a sea-wall, causeway connecting it with the mainland, paved streets and sidewalks, underground conduits for telephone and electric wires, a gas system and other improvements, and that there was no legal obligation on the defendants below to pay the balance due on the purchase price of the property until these improvements had been completed according to the terms of the vendor's sale agreement.

It is the contention of the appellees that the island on which the land was situated had been constructed and all

the improvements about the lot were made according to the terms of the vendor's sale agreement when the suit at bar was filed, except a sidewalk, street pavement and a conduit system for telephone and electric wires and a substantial portion of all the improvements had been made or completed. (The reason presented by the plaintiffs to justify their default or failure to make the improvements according to the vendor's sales agreement was the bursting of the Florida boom and the hurricane in 1927 in the Miama area destroying all work on the project to that date.) That the defendants below as a matter of law were entitled to an abatement of damages for the improvements not completed; that the defendants below as a matter of law were not entitled to a rescission of the vendor's sales agreement and a decree for a lien on the property for payments previously made thereon because twelve years had intervened and that the defendants were guilty of laches in not filing suit for a rescission of the vendor's sale agreement during this time. It was a further contention that the date of payment of the last note on the purchase price agreement matured prior to the date when the improvements about the lot were to be completed and the vendor's sales agreement was silent on the question that the payment of the balance due on the purchase price was dependent on the completion of all the improvements.

The counter claim of the defendant seeking a cancellation or rescission of the vendor's sales agreement was filed in the lower court on November 7, 1938. The defendants became the owners by assignment of the vendor's sale agreement involved in this case on September 24, 1925, and paragraph 6 of the stipulation of counsel filed in this suit is viz.: "That on November 10, 1926, and on December 31, 1926, the proposed improvements had not been made

on the real estate described in the contract of purchase and sale." It is reasonable to assume on this record that the defendants had knowledge that the vendor had defaulted in making the improvements according to the vendor's sales agreement and with this knowledge or information clearly before them from December, 1926, to November, 1938, a period of approximately twelve years, they took no steps or action to procure an order or decree of cancellation or a rescission of the agreement. This presents a question of paramount importance.

In the case of Gryzmish v. Krim, 126 Fla. 191, 170 So. 717, this Court had before it a counterclaim in an answer based on a contract to purchase containing covenants to make certain described improvements, similar to the contract in the case at bar, in which a cancellation or rescission was sought and also a return of money paid under the contract of purchase, and the defendant took no steps or action for a period of two years to obtain an order or decree of cancellation or rescission, and this Court held that she was guilty of laches and could not maintain her counterclaim. The Court said:

"In this connection we also observe from the record that the defendant counterclaimant now claims that she learned of the true condition of the property in June, 1926. This was just a few days after she had taken an assignment of the contract for deed. Yet, she took no legal action against anyone to recover the money which she alleged that she paid to Butler's agents until she filed her counterclaim in this suit, which was two years later. It therefore, appears that she was guilty of gross laches. That laches will bar recovery in a suit to rescind contract is well settled in this jurisdiction. See Marshall v. Hartman, *supra* (104 Fla. 143, 139 Sou. 441) ; Glass v. Craig, *supra* (83 Fla. 408, 91

Sou. 332); and the old case of Stephens v. Orman, 10 Fla. 9; Mizell v. Watson, 57 Fla. 111, 49 Sou. 149; Lake Mable Development Corporation v. Bird, 99 Fla. 253, 126 Sou. 356; Columbus Hotel Corp. v. Hotel Management Co., 116 Fla. 464, 156 Sou. 893, and cases there cited."

See Davis v. Albertson, 126 Fla. 841, 172 So. 241.

The vendor's sales agreement, while dated November 10, 1923, provided or covenanted for the completion of all improvements to be made or completed on or about the property on or before December 31, 1926, and the covenants for the payment of the balance due on the purchase price was to be made not later than 36 months after November 10, 1923, on or before November 10, 1926. It will be observed that the covenants of payment were to be performed some few days prior to the completion of the improvements covenanted to be performed by the vendor.

The law defines a dependent covenant as one which depends on the prior performance of some act or condition or as otherwise defined, an agreement to do or to omit to do something with reference to the thing on which it depends and of which it relates. The courts construe covenants as dependent where the act of each party is to be done or performed at the same time.

An independent covenant is one which goes only to a part of the consideration on both sides and a breach of which may be paid for in damages. Where two covenants exist which cannot be performed or where something is to be done on one side before the whole can be performed by the other are independent covenants, and if covenants are once shown to be independent they continue as such. See 15 C. J., p. 1221, par. 20.

In determining whether covenants are dependent or not, the intention of the parties is sought for and regarded in

the light of all the circumstances evidenced by the contract. The court will consider whether the acts contemplated by the covenants are subordinate and incidental or whether they go to the entire consideration. See Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252. It cannot be overlooked that the Florida real estate boom had subsided about the time of the maturity of the balance due on the purchase price agreement and shortly thereafter or in the Fall of 1926, a terrific hurricane struck the Miami area and the completion of the work by the vendor was naturally retarded. If it had been the intention of the parties to the vendor's agreement that all the improvement work contemplated by the agreement should have been performed prior to the payment of the purchase price, it appears reasonable to assume that the vendee would not have delayed for a period of twelve years to seek a return of the money paid under the agreement and a cancellation thereof by a court decree.

This Court in considering similar covenants in a purchase agreement in the case of Zambetti v. Commodores Land Co., 102 Fla. 586, 136 So. 644, said:

"The rule seems to be well settled that when covenants on the part of different parties to a contract are to be performed at different times or when covenants to make improvements are independent of covenants to purchase, or when a covenant goes only to part of the consideration on both sides and a breach of such covenant may be compensated in damages and will not defeat the purpose of the contract, the covenant is independent and an action at law may be maintained for its breach by the party or parties interested. 27 R. C. L. 646; Crampton v. McLaughlin Realty Co., 51 Wash. 525, 99 Pac. 586, 21 L. R. A. (N.S.) 823; American Emmigrant Co. v. County of Adams, 100

682

U. S. 61, 25 L. Ed. 563." See Walker v. Close, 98 Fla. 1103, 125 So. 521; Sanford v. Cloud, 17 Fla. 532.

The Court has been supplied with splendid briefs by counsel for the respective parties in which each material point has been well and thoroughly presented. We have heard able and exhaustive arguments, orally, at the bar of this Court by counsel; have carefully considered the entire record and the briefs and authorities cited, and have concluded that there is no error in the record.

The decree appealed from is hereby affirmed.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

BROWN, J., concurs in conclusion.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON PETITION FOR REHEARING

CHAPMAN, J.—On petition for rehearing it is suggested that this Court in holding that the covenants were independent failed, omitted and neglected to consider, viz.: (1) the case of Walker v. Close, 98 Fla. 1103, 125 So. 521; (2) Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252; (3) the covenants to build an island and place specific improvements thereon; (4) the intention of the parties that the vendee should pay all installments before the vendor constructed the island and improvements thereon and the future results flowing from such precedent; (5) failure to pay the installments rendered the contract void; (6) the intention of the parties was that the island should be constructed before the installments were paid; (7) the island constructed and the improvements completed prior to the payment of the purchase price; (8) estoppel on the part of appellees to claim the covenants were independent; (9) the

value of the improvements not made deducted from the balance due on the purchase price; (10) the failure to pay the taxes assessed against the property rendered the contract null and void.

The several grounds from (1) to (10), inclusive, appearing in the petition for rehearing were before the Court and thoroughly considered prior to the adoption of the original opinion. We fail to see that either of these ten grounds has merit as they were before the Court at the time of the entry of the original opinion.

Grounds 11, 12, 13, 14 and 15 are based on the doctrine of laches and suggest certain items or things overlooked, omitted or not considered by the Court. These several items were before the lower court and fully considered, and it appears to us that an honest effort was made in the lower court to administer justice as between these litigants, and on appeal here this Court carefully considered the contentions of counsel for the respective parties, the briefs were studied and the record carefully examined and the several contentions on petition for rehearing were fully considered by this Court.

The petition for rehearing is hereby denied.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—I think that a rehearing should be granted in this case. As I see it, the petition for rehearing raises some pertinent points which require further consideration by the Court, and which might well lead to a different disposition of the case.