MADELINE HINZELIN, joined by her husband, PIERRE HINZELIN, and ANDRE BAILLY, v. PIERRE BAILLY.

22 So. (2nd) 43                    January Term, 1945
May 1, 1945.                       Division ·B

*McCune, Hiassen & Fleming* and *C. A. Hiassen*, for petitioners.

*Edward E. Fleming, O. B. Simmons, Jr.,* and *Evans, Mershon & Sawyer,* for respondent.

BROWN, J.:

Pierre Bailly, a resident of Dade County, filed a bill in the Circuit Court of Dade County for rescission and accounting against his sister, Madeleine Hinzelin, and her husband, residents of Washington, D. C., and also against his brother, Andre Bailly, a resident of Connecticut. The defendants interposed a motion to dismiss the bill for want of equity, stating several different grounds. The motion to dismiss was denied, and defendants have sought review by this Court of the order of dismissal by petition for certiorari under our rule. As our decision of the questions raised may well prove determinative of the cause, we deem it advisable to state our reasons therefor.

The bill alleges that prior to March 1, 1943, Pierre Bailly, plaintiff in the court below and respondent here, had entered

into divers and sundry contracts with his sister and brother, defendants below and petitioners here, and was indebted to each of them for a large sum of money. Plaintiff owned numerous parcels of real estate on which said defendants held options. Differences with respect to the amount owed by plaintiff to each and the manner in which it should be paid had arisen and he had for a long time negotiated for the settlement of their differences regarding their obligations each to the other, and that on March 1, 1943, in order to compromise and settle all the differences between him and the defendants, and with the intent and purpose of finally adjusting all differences and difficulties concerning their respective rights, plaintiff made an offer to his sister to transfer to her and her brother Andre, certain real and personal property in full and complete settlement of all his obligations to the defendants, which offer was contained in a letter dated at Miami, Florida, on March 1. The letter contemplated that the sister should take up plaintiff's offer with her brother, and the bill alleges that the offer contained in the letter was accepted by the sister and brother by a telegram sent by the sister from New York on March 3, 1943. This letter contemplated the exchange of certain properties in Dade County by which plaintiff was to receive deeds to four properties, on one of which the Grant Hotel was located, and was to deliver a deed by which he conveyed the property on which the Versailles Hotel at Miami Beach was located, subject to the existing mortgage on the property. The letter also contemplated the conveyance to plaintiff of the Alton Dade (Nut Club) property for which he was to pay $66,000.00, $55,000.00 in cash and $11,000.00 by "note Chateau-Renault." The letter also told the sister to send all these papers, "signed by you and by your husband immediately to O. B. Simmons, Jr., attorney, c/o Evans, Mershon & Sawyer, Miami, Florida, by air mail special delivery."

Said letter also contained the following paragraph:

"Inasmuch as I waive my dowry in the transaction, as we make it, I also have to have a paper from Andre and yourself, by which you obligate yourselves to return to Father's estate your dowry. It goes without saying that should I waive my

dowry, you have to waive your dowry. I think that you did not overlook this point of view. The international situation allows us to hope for a possible settlement of Father's affairs in France in the near future."

The bill alleges that the defendants executed the necessary deeds and did everything that was required by plaintiff's letter, excepting in one respect, the ·waiver of their dowry, which will be reverted to later. The several deeds made by plaintiff's sister and brother, drawn by plaintiff's attorney, were promptly executed and returned to plaintiff, and being approved by plaintiff and his attorney, Mr. Simmons, these deeds were filed for record; likewise plaintiff's deed to his sister, dated March 3, 1943, conveying the Versailles Hotel property, which the letter showed was valued at $552,625.00 "in excess of the mortgages," was accepted by her and forwarded to Miami and duly recorded. This deed recites that it is made subject to a mortgage which had been made by plaintiff to the Connecticut Mutual Life Insurance Company on which there was a principal balance of $190,000.00. So the agreement was made and the deeds all recorded in March, 1943. The bill alleges that plaintiff had performed every obligation required of him by the agreement, except the payment of $55,000.00 (due by him on the agreed purchase price of the "Nut Club" property conveyed to him) which plaintiff has offered to pay upon the execution of an agreement on the part of the defendants described in the third paragraph of the bill.

Meanwhile the bill alleges that plaintiff had paid taxes on property conveyed by him by the defendants and the defendant sister had received rent and paid sums for principal and interest on mortgages, insurance premiums and other sums on the hotel property conveyed to her. Photostatic copies of various deeds are attached as exhibits to the bill.

The third paragraph of the bill reads as follows:

"That one of the main considerations moving the plaintiff to enter in the agreement for the settlement and compromise of the differences between the plaintiff and the defendants was the condition that an agreement be executed by the defendants, Madeleine Hinzelin and Andre Bailly, as specifically

required by plaintiff's said letter dated March 1, 1943, by which the said Madeleine Hinzelin and Andre Bailly would obligate themselves to return their dowry to the estate of their deceased father, in order that said estate might be settled as soon as possible after the termination of the war; that it was well understood between the said parties that Lucien Bailly, father of the plaintiff and the defendants, Madeleine Hinzelin and Andre Bailly, had prior to his death delivered to the defendants, Madeleine Hinzelin and Andre Bailly, in the Republic of France, stocks, bonds and other property having a value of several million dollars, to be divided equally among the plaintiff and the said defendants; that the delivery of such stocks, bonds and other property by said Lucien Bailly to the defendants, Madeleine Hinzelin and Andre Bailly, was accomplished in such a manner that it vested in said defendants the absolute ownership thereof, and plaintiff has no documentary evidence to show that the property so delivered is the property of the estate of his deceased father, and the agreement which plaintiff demanded to be executed by the said defendants was for the purpose of providing plaintiff with documentary evidence to establish his right to one-third of the estate of his deceased father held by the defendants, Madeleine Hinzelin and Andre Bailly, as aforesaid; that plaintiff has demanded numerous times that said defendants, Madeleine Hinzelin and Andre Bailly, execute such document, but said defendants have failed and refused to execute such an instrument and continue to fail and refuse so to do; that because the defendants have failed and refused to execute and deliver such an agreement, by which they obligate themselves to return their dowry to their deceased father's estate, the plaintiff has elected to rescind the entire transaction; that the plaintiff offers to do equity and is willing to restore the defendants and each of them to the position which they occupied on March 1, 1943, before the execution and delivery of any of the instruments herein referred to, and to put each of the defendants in status quo; that the plaintiff is ready, able and willing and offers to execute and deliver all papers and documents which may be necessary to accomplish such purpose and to pay such

money as may be required to be paid and to receive such conveyances and such money as may be required in order to effect a complete rescission of the agreement as expressed by the letter of plaintiff dated March 1, 1943."

It appears from the prayer for relief that the main purpose of the bill is to secure the rescission of the contract evidenced by plaintiff's letter and its acceptance and the action taken by the parties thereunder, and that each of the parties be required to execute such instruments and perform such acts as may be necessary to place the parties in status quo, and that pending final determination of the cause, the defendants be enjoined from conveying the Versailles Hotel property which had been conveyed by plaintiff to his sister. So it is necessarily a bill for rescission and cancellation. The bill does not pray that the defendants be required to execute an instrument "waiving" their dowry in their deceased father's estate, or "returning" their dowry to such estate. So one of the main purposes of the bill, if not *the* main purpose, is to cancel plaintiff's deed of the Versailles Hotel property to his sister Madeleine, and also the three deeds he had received from his sister and brother. The bill does not allege that plaintiff did not receive from his brother and sister full and adequate consideration for the hotel property thus conveyed by him. The letter of plaintiff to his sister, written March 1, 1943, and her telegraphic reply, are set out in full in the bill; also photostatic copies of plaintiff's said deed to his sister and the three deeds received by him from his sister and brother, which copies show the revenue stamps attached to the several deeds and which are presumed to show the values of each of the properties conveyed. The values so indicated harmonize with those stated in plaintiff's letter of March 1, 1943. Thus plaintiff made one deed and received three deeds.

It appears from plaintiff's letter to his sister, set out in the bill, and the stamps on the deed, that the value of Versailles Hotel property conveyed by plaintiff to his sister, after deducting the mortgage thereon, was $552,525.12, and the amount which plaintiff was to pay his brother for the deed conveying the Nut Club property was $66,000.00, (Chateau Renault note $11,000, duly delivered, and cash $55,000.00, the

latter not yet paid) making a total consideration moving from plaintiff to defendants of $618,625.12.

And from the same documents it appears that the consideration moving from defendants to plaintiff consisted of the following: Biscayne Boulevard deed and note, $76,742.70; deed to Alton Dade (Nut Club property) $66,000.00; various properties conveyed by Madeleine Hinzelin to plaintiff by deed marked Exhibit B, including the Grand Hotel Property, aggregating $336,938.99; cancellation of plaintiff's note to his brother Andre, $94,828.43; making a total consideration given by defendants to plaintiff of $618,625.12, which is the same as the amount of consideration contemplated to go from plaintiff to defendants. Thus the entire purchase price of the Versailles Hotel property was more than paid for by the transfer to plaintiff by defendants of other Dade County property. Therefore the matter of the waiver of dowry in their father's French estate, mentioned in plaintiff's letter of March 1, was a collateral matter which formed no essential part of the consideration for this exchange of deeds.

The paragraph in plaintiff's letter about dowry is somewhat ambiguous. The bill does not allege that plaintiff had theretofore waived his dowry. Just what the word "dowry" means in France or in French law, this writer is not informed. The old meaning of the word in England and some parts of this country was that dowry referred to the property, money or estate which the wife brings to the husband in marriage. Let us assume that it means in France some substantial interest of a child in the estate of a deceased parent. In his letter plaintiff said: "Inasmuch as I waive my dowry in the transaction, as we make it, I also have to have a paper from Andre and yourself by which you obligate yourselves to return to Father's estate your dowry. It goes without saying that *should* I waive my dowry, you have to waive your dowry." (Italics supplied.) That language is susceptible of the meaning that by this letter in regard to the exchange of properties in Dade County plaintiff is waiving or offering to waive his dowry provided his brother and sister do the same, and that he expects them to furnish him a paper by which they obligate themselves to "waive" their dowry and "return" their

dowry to their father's estate. If the sister's telegram can be considered as a general acceptance of all the proposals contained in plaintiff's letter, which he seems to have so construed it to be at the time, as he proceeded to have all the deeds recorded, then perhaps she thereby waived her dowry, or agreed to do so, but in his bill plaintiff says that what he expected was a written agreement from his brother and sister which would obligate them to "return" their dowry to the estate of the deceased father in order that the estate might be settled as soon as possible after the war.

Plaintiff in his bill goes beyond the facts stated in his letter of March 1, and alleges that the father of the plaintiff and defendants, prior to his death, had delivered to the defendants Madeleine Hinzelin and Andre Bailly, in the Republic of France, stocks, bonds and other property having a value of several million dollars, to be equally divided between his three children, but that this was done in such a way that it vested in the defendants the absolute ownership and plaintiff has no documentary evidence to show that the property so delivered was the property of his father, and that the agreement which plaintiff demanded was for the purpose of providing documentary evidence of his right to one-third of the estate of his deceased father held by the defendants. No such document as this was demanded in the letter of March 1, 1943, and the exchange of deeds as proposed in that letter was predicated upon actual agreed values. Paragraph 2 of the bill states the general purpose of the letter of March 1 in the opening paragraph. That paragraph states that the plaintiff was indebted to the defendants in large sums of money and that the purpose of the proposed exchange of deeds was the settlement of all his obligations to the defendants out of their respective rights, but no mention is made of any obligation of the defendants to the plaintiff.

Our conclusion is that if any promise on the part of defendants to waive dowry in or return dowry to the deceased father's estate can be implied from the quoted paragraph in plaintiff's letter and the defendant's telegram to the plaintiff on receipt of the letter, it is a collateral promise unrelated to the transaction evidenced by the four deeds which were exe-

cuted and exchanged between the parties and duly recorded. This is demonstrated by the conduct of the plaintiff himself. The several deeds from Madeleine Hinzelin and her husband to Pierre Bailly were transmitted, as instructed in plaintiff's letter, to Mr. Simmons, plaintiff's attorney, one of which was recorded on March 9, 1943, and the other two were recorded on March 18, 1943, at the same time that the deed from plaintiff to Madeleine Hinzelin covering the Versailles Hotel was recorded. Therefore the plaintiff must have decided that all conditions had been performed under the contract entitling the respective parties to the delivery and recordation of all these deeds. In fact, it appears that the plaintiff consummated the transaction contemplated by the contract by accepting the surrendered notes and the deeds and recording the deeds, and must have determined that either such acceptance and recordation of the deeds consummated the main purpose of the contract and that the legality of his action in so doing was not dependent upon the execution and delivery of any separate instrument that might have been contemplated by the "dowry" paragraph of plaintiff's letter, or that the acceptance of the letter's proposals made a separate instrument unnecessary. If plaintiff had thought that the covenant for the exchange of deeds contained in the contract was a covenant which was dependent upon concurrent compliance with the "dowry" paragraph of the contract by the execution of a separate document, surely he would not have delivered and recorded the deeds before the "dowry" paragraph was in his opinion so complied with.

Just preceding the "dowry" paragraph in plaintiff's letter of March 1, 1943, is a more explicit paragraph reading: "It is well understood that this transaction will only be definitely accepted by me, only if you send me back the paper that I signed you, and by which I pledged myself to make an equalization of assets after the war on the quotas of 27.5%, 27.5% and 45% for myself." This paragraph was complied with by surrendering this paper.

The bill alleges that the deeds were executed by defendant Madeleine Hinzelin and husband pursuant to the agreement for the settlement of the affairs of the plaintiff and defendants as set forth in the letter of March 1, and that she

surrendered to the plaintiff a note for $44,115.00 and another for $76,472.70, and also surrendered to plaintiff the paper signed by the plaintiff by which he had obligated himself to make equalization of the assets of the respective parties. Indeed the bill shows a complete performance by the parties of the contract as outlined in plaintiff's letter of March 1 with the one possible exception of the "dowry" paragraph above referred to.

It thus appears that the agreed consideration for plaintiff's conveyance of the Versailles Hotel property, subject to a mortgage for $190,000.00, was paid in full by the several deeds delivered to him by the defendants, the value of the properties so conveyed to him having been determined and stated by plaintiff and acquiesced in by defendants, and also by the cancellation of certain promissory notes which had been given by plaintiff to defendants, and that if the "dowry" paragraph in plaintiff's letter to his sister and its acceptance by defendants constituted a covenant by defendants to waive or return to their father's French estate their dowry, the present actual performance of such covenant was not dependent upon, nor a condition precedent to, the consummation of the agreement of the parties relative to the exchange of the four deeds and the cancellation of plaintiff's notes, as shown by the action of plaintiff himself in accepting and recording the deeds and accepting delivery of his cancelled notes.

Under the facts alleged in the bill and deducible from the accompanying exhibits, if plaintiff is not satisfied that the acceptance of his letter by defendants and their actions thereunder by the exchange of the deeds and the surrender of his notes, etc., amounted to a binding agreement to "waive" and "return" their dowry, as required by the said "dowry" paragraph, then plaintiff might be entitled to file a bill for specific performance of said "dowry" paragraph of the contract to compel the defendants by court decree to execute a formal and separate instrument in compliance therewith, offering in the bill to execute an instrument waiving his own dowry rights. While this kind of relief is not prayed for in this bill, and plaintiff may not now desire it, we do not attempt to decide the question of plaintiff's right to specific performance in this respect in advance of the trial court's action. With this in

mind, while holding that plaintiff is not entitled to the rescission and cancellation expressly prayed for in the present bill, we are not prepared to say that a bill for specific performance would not lie in respect to the execution of the papers above alluded to if allegations appropriate to a bill for specific performance were contained therein, coupled with an offer by plaintiff to complete performance of the contract on his part by paying into court, or offering to pay, his $55,000.00 default on his contract before or upon the delivery of the proper papers.

It might be observed that under the "dowry" paragraph of plaintiff's letter, in so far as the waivers of dowry therein referred to are concerned, plaintiff has not yet waived his dowry, as his letter of March 1, 1943 indicates that his waiver of his dowry in his father's estate was conditioned upon the documentary waiver by his brother and sister of their dowry. Just what form such a paper should take is not mentioned, but doubtless the parties to this suit understood. Also, they doubtless understood what plaintiff meant by the clause about the "return" by defendants of their dowry to their father's estate. No fraud or dishonest conduct is charged in the bill; only the failure to execute and send to plaintiff the "paper" referred to in the "dowry" paragraph. As a general rule, fraud cannot be predicated on a mere promise not performed. Harrington v. Rutherford, 38 Fla. 321, 21 So. 283. Furthermore, the last sentence of the "dowry" paragraph indicates that the proposed waivers and return of dowry could not be carried into actual operative effect until after the war.

Counsel for plaintiff in the court below, respondent here, cite Southern Colonization Co. v. Derfler, 73 Fla. 924, 75 So. 790; International Realty Associates v. McAdoo, 87 Fla. 1, 99 So. 117; Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252; Zambetti v. Commodores Land Co., 102 Fla. 586, 136 So. 644; and Nolan v. Lunsford, 142 Fla. 671, 196 So. 193, in which the Zambetti case was quoted from with approval. All of the cited cases relate to *executory* contracts, it being respondent's contention that in the case at bar we are dealing with an executory contract not yet fully executed, and that the doctrine of dependent covenants applies.

In Zambetti v. Commodores Land Co., supra, this Court speaking through Mr. Justice TERRELL, well said:

"Generally, covenants to an agreement are said to be dependent when made by two parties to a deed or contract and are such that the thing covenanted to be done on the part of each enters into the whole consideration for the covenant on the other part, or where the acts or covenants of the parties are concurrent, and are to be done or performed at the same time, and neither party can maintain an action against the other without averring and proving performance on his part. Covenants for conveyance and payment of the consideration for land as do covenants by a lessee to pay rent and by a lessor to make essential improvements or repairs without which the premises would be useless are typical examples of dependent covenants. Covenants are construed to be dependent or independent according to the intention and meaning of the parties as gleaned from all the circumstances of the case and any technical application of words should give way to such an intention. 7 R.C.L. 1089 and cases cited. "In Sun City Holding Co. v. Schoenfeld, 87 Fla. 777, 122 So. 252, this Court held that to determine whether covenants are dependent or not, the intention of the parties is to be sought for and regarded in the light of all the circumstances evidenced by the contract. The Court will consider whether the acts contemplated by the covenants in question are merely subordinate and incidental, or whether they go to the entire consideration of the contract; whether the matters relied upon by the complainant party amount to mere promises or expectations of future events, or whether they relate to material and dependent acts to be performed concurrently with covenants of the other party; and all other facts and circumstances from which the intention of the parties, which is the ultimate controlling element, may be ascertained."

In the case just quoted from, the purchaser of a lot in Jacksonville, Florida, sought to obtain rescission of an executory contract, in which the vendor covenanted to pave the adjoining street and construct a water main at its expense, and to let contracts for these improvements within 60 days from date of contract. The purchaser agreed to pay for the lot $8500.00, $1500.00 in cash and the balance in three annual

installments, running over a period of three years. The vendor failed to perform its covenant above recited, and the vendee filed a bill for the rescission of the contract. This Court held that the covenants were not dependent, nor did they run concurrently, and affirmed the action of the chancellor in dismissing the bill.

In Southern Colonization Co. v. Derfler, supra, the vendor sold the vendee certain wild land seventy miles from any railroad. The contract expressly provided that the vendor would within a year thereafter construct a railroad within ten miles of the land. It failed to do so. The vendee demanded a return of the purchase money installments already paid, and offered to surrender his contract. The vendor did not reply. Vendee brought suit to rescind and cancel the contract and recover the money paid. The trial court overruled a demurrer to the bill. This court held that the damages sustained by plaintiff were not susceptible of definite proof; that plaintiff had no adequate remedy at law, that the facts alleged entitled the plaintiff to the relief prayed, and affirmed the lower court.

But in International Realty Associates v. McAdoo, supra, another case involving a land sale contract, this Court held that the lower court was correct in denying rescission and cancellation. In that case it was held that: "The rule is well settled in this country that cancellation or rescission will not be granted solely for breach of contract in the absence of fraud, mistake, undue influence, multiplicity of suits, cloud on title, trust, or some other independent ground for equitable interference." (Citing numerous authorities).

In Sun City Holding Co. v. Schoenfeld, supra, the court held that a prima facie case for rescission was made out where a development corporation sold lots on installments under a contract providing for installing electric lights and water in, and paving and sidewalks on, an adjoining street, and the installments payable under the contract ran concurrently with the making of the improvements contracted for. In that case the court said:

"Where covenants are dependent, one party should not be compelled to pay out his money in strict performance of his own covenants, when the other party can not or will not

perform on his part material acts which are to be concurrently done and which are not merely subordinate or incidental but go to the entire consideration which supports the promise of the other party to pay. Otherwise the purchaser, although compelled to pay the purchase price, would not receive what he stipulated to purchase."

In Nolan v. Lunsford, supra, where a vendor's lien was sought to be enforced, the facts were peculiar, but the court, speaking through Mr. Justice CHAPMAN, quoted with approval from the Zambetti case, supra, and held that, under the facts of the case before the court, the clause in the vendor's covenant for improvements, which had been in large part performed but not fully performed, was an independent covenant, the breach of which did not destroy the vendor's lien. The lower court decreed that the value of the improvements not made should be credited on the purchase price, and the vendor's lien for the balance enforced, which decree was affirmed.

Petitioner's first contention is that our Florida decisions have established the rule that a mere promise to do something in the future, even though it may incidentally affect the consideration for a conveyance, and even though it may have been one of the motivating forces leading to the transaction, is not a ground for the cancellation of a duly delivered, accepted and recorded deed. This contention appears to be sustained by our decisions.

Counsel for petitioner cite Harrington v. Rutherford, 38 Fla. 321, 21 So. 283; Brinkley v. Arnold, 98 Fla. 166, 123 So. 569; Hendricks v. Starke, 99 Fla. 277, 126 So. 293; and Beatty v. Lucas, 112 Fla. 265, 150 So. 239. In Harrington v. Rutherford, supra, it was held that where a deed was made to a party in consideration of his promise to pay certain notes which the grantor had made and the grantee had endorsed, the grantee's failure to carry out his promise was not sufficient, in the absence of fraudulent intent, to entitle the grantor to rescission and cancellation of the deed. In that case it was said:

"As a general rule fraud can not be predicated on a mere promise not performed. As stated in one case, 'to be available, there must be a false assertion in regard to some exist-

ing matter by which a party is induced to part with his money or his property. In morals the failure to perform a promise may be without excuse or justification, but in law false representations to authorize the rescission of a contract must be made in regard to existing facts.' Perkins v. Lougee, 6 Neb. 220. The authorities establish the rule that ordinarily a promise to do something in the future, though made by one party as a representation to induce another to enter into a contract, will not amount to a fraud in a legal sense, though the promise subsequently and without excuse be broken and unfulfilled." . . .

"Rutherford was at the time insolvent, as it appears, but no representations were made as to his condition in this respect, and complainant was not misled by false statements as to it. The agreement by its very terms contains a promise to do something in the future—pay the notes and guarantee Harrington and Merritt against all liability thereon—and under the rule stated the bill fails to make a good case on the theory that the deeds were fraudulently procured to be delivered."

In Brinkley v. Arnold, supra, there was an exchange of deeds, each being given in exchange for the other. Brinkley told Arnold that if the lands were not satisfactory and as represented, he would reconvey the land deeded to him by Arnold. In the agreement for the exchange of deeds, Brinkley was to pay Arnold some additional consideration. Arnold's land was in Florida, Brinkley's in Arkansas, and Arnold alleged that Brinkley had falsely represented to him that he, Brinkley, was the owner of the Arkansas land in fee simple. Arnold alleged that he later discovered that Brinkley did not own the land, whereupon he demanded that Brinkley reconvey the Florida land to him, but that Brinkley refused to reconvey to Arnold as promised. In the unanimous opinion of the court, written by Mr. Justice ELLIS, it was said:

"It appears from the allegations of the bill that the land in Arkansas consisted of part only of the consideration for the deed sought to be cancelled. The complainant alleges that by reason of the failure of title in the defendant to the

Arkansas land the consideration for complainant's deed 'has almost wholly failed.'

"Equity will not order the cancellation of a deed for land because of failure of consideration. See Marks v. Baker, 20 Fla. 920; Birnbaum v. Soloman, 22 Fla. 610; Harkness v. Fraser, 12 Fla. 336; Harrington v. Rutherford, 38 Fla. 321, 20. So. R. 283."

The decree of the court below, granting cancellation of Arnold's deed to Brinkley was reversed.

In the case of Hendricks v. Stark, supra, wherein cancellation of a mortgage was sought by the defendant in a foreclosure proceeding, the principles stated in Brinkley v. Arnold were cited with approval, and in large part quoted, in the court's unanimous opinion.

The case of Beatty v. Lucas, supra, wherein the cancellation of a satisfaction of mortgage was sought, was decided on the same or a similar principle. In that case it was held that the authorities establish the rule that ordinarily where a promise to do something in the future is made to induce another to enter into a contract, and such a promise is later broken without excuse, no ground for rescission as for fraud is afforded. To like effect is the case of International Realty Associates v. McAdoo, supra.

Counsel for petitioner also cite Zambetti v. Commodores Land Co., supra, and Nolan v. Lunsford, supra, as dealing with an apparent exception to the cases just above discussed, in that they recognize the principle that a breach of dependent covenant may afford ground for the rescission of an *executory* contract, but appellant contends that those cases do not apply to the cancellation of a recorded deed. In this we concur, under the facts here. We have already discussed these cases. They have little or no application to cases where suit is brought for the cancellation of a delivered and recorded deed, as hereinabove brought out. Furthermore, for the reasons shown in our analysis of respondent's bill, our conclusion is that the execution, delivery, acceptance and recording of the four deeds in this case, under the contract between the parties, was not dependent upon concurrent compliance with the dowry paragraph of the contract; and that the doctrine of a

dependent covenant cannot be invoked to procure judicial cancellation and rescission of the deeds here involved.

Certiorari is granted; the order denying the motion to dismiss the bill is quashed, and the cause remanded to the court below for the entry of an order of dismissal consistent with the views expressed in the foregoing opinion.

CHAPMAN, C. J., THOMAS and SEBRING, JJ., concur.